# In re N-A-M-, Respondent

*Decided October 24, 2007*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  In order to be considered a particularly serious crime under section 241(b)(3)(B)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3)(B)(ii) (2000), an offense need not be an aggravated felony under section 101(a)(43) of the Act, 8 U.S.C. § 1101(a)(43) (2000 & Supp. IV 2004).

(2)  Once the elements of an offense are found to potentially bring it within the ambit of a particularly serious crime, all reliable information may be considered in determining whether the offense constitutes a particularly serious crime, including but not limited to the record of conviction and sentencing information.

FOR RESPONDENT:  Laura L. Lichter, Esquire, Denver, Colorado

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Weldon S. Caldbeck, Assistant Chief Counsel

BEFORE:   Board Panel: FILPPU and PAULEY, Board Members; M.C. GRANT, Temporary Board Member

PAULEY, Board Member:

In a decision dated March 13, 2007, an Immigration Judge found the respondent removable and denied the relief of withholding of removal under section 241(b)(3)(B)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3)(B)(ii) (2000).[1]  The respondent has filed a timely appeal from that decision.[2]  The appeal will be dismissed.

---

[1]  The respondent did not apply for asylum, conceding that an application would be untimely.  Likewise, the respondent did not apply for protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46. 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988).

[2]  As noted in the Immigration Judge's decision, the respondent's counsel characterizes the respondent as a preoperative transgendered person.  We will therefore not refer to the respondent's gender in this order.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent, a native and citizen of El Salvador, was convicted on June 7, 2005, of felony menacing in violation of sections 18-3-206(1)(a) and (b) of the Colorado Revised Statutes and was sentenced to 4 years' deferred judgment. Under section 18-3-206(1) of the Colorado Revised Statutes, a person "commits the crime of menacing if, by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury." Furthermore, the offense of menacing under section 18-3-206(1) is a felony if the crime was committed

> (a) By the use of a deadly weapon or any article used or fashioned in a manner to cause a person to reasonably believe that the article is a deadly weapon; or
> (b) By the person representing verbally or otherwise that he or she is armed with a deadly weapon.

According to a Statement in Support of Warrantless Arrest in the record, the respondent was performing oral sex on a 20-year-old man against his will when the victim awoke. Thereafter, an argument took place, which involved two other persons who appeared to be the parents of the victim. The respondent allegedly grabbed two knives and threatened to kill the victim and one of the other members of the household.

The Immigration Judge found that the respondent had experienced past persecution but was ineligible for withholding of removal as a result of the conviction for a particularly serious crime.

## II. ISSUES ON APPEAL

At issue in this case is whether the respondent's offense of felony menacing constitutes a particularly serious crime under the Act. The respondent contends that the Immigration Judge erred in finding that the conviction is for a particularly serious crime. In examining this question, we must address two distinct issues. The first is whether a particularly serious crime must be an aggravated felony under section 101(a)(43) of the Act, 8 U.S.C. § 1101(a)(43) (2000 & Supp. IV 2004), a matter on which there is a conflict among the circuits. The second issue is whether, as one circuit has held, we are limited to certain sources of evidence in determining whether an offense is particularly serious.

We hold that a particularly serious crime need not be an aggravated felony. Furthermore, once the elements of the offense are examined and found to potentially bring the offense within the ambit of a particularly serious crime,

all reliable information may be considered in making a particularly serious crime determination, including but not limited to the record of conviction and sentencing information.

## III. ANALYSIS

### A. Interplay Between Particularly Serious Crimes and Aggravated Felonies

The Act provides that an alien is ineligible for withholding of removal if "the Attorney General decides that . . . the alien, having been convicted by a final judgment of a particularly serious crime, is a danger to the community of the United States." Section 241(b)(3)(B)(ii) of the Act. The Act further provides as follows:

> For purposes of clause (ii), an alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime.

Section 241(b)(3)(B) of the Act.

The respondent suggests that the offense of felony menacing should not be considered a particularly serious crime because it is not an aggravated felony. We disagree. A plain reading of the Act indicates that the statute does not require an offense to be an aggravated felony in order for it to be considered a particularly serious crime. *See* section 241(b)(3)(B)(ii) of the Act; *see also Ali v. Achim*, 468 F.3d 462, 470 (7th Cir. 2006), *cert. granted*, 75 USLW 3557, 76 USLW 3018 (U.S. Sept. 25, 2007) (No. 06-1346) (noting that section 241 of the Act "does not state a general rule that only aggravated felonies can be considered" particularly serious crimes). *Contra Alaka v. Att'y Gen.*, 456 F.3d 88, 104-05 (3d Cir. 2006).

We agree with the United States Court of Appeals for the Seventh Circuit that the "designation of aggravated felonies producing sentences of at least five years' imprisonment as per se 'particularly serious' creates no presumption that the Attorney General may not exercise discretion on a case-by-case basis to decide that other nonaggravated-felony crimes are also 'particularly serious.'" *Ali v. Achim, supra*, at 470.[3] Although we have issued no precedent decision on this question, our consistent practice in numerous

---

[3] We find the reasoning of the Seventh Circuit in *Ali v. Achim, supra*, to be persuasive, even though it is not binding in this case, which arises in the Tenth Circuit.

decisions over the course of the years has reflected an understanding that the classification of an offense as a "particularly serious crime" is not limited to offenses that are aggravated felonies.

Our reading of the Act is supported by the history and background of the particularly serious crime provision, which is set forth in detail in *Matter of L-S-*, 22 I&N Dec. 645, 648-53 (BIA 1999). When Congress enacted the Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102, it amended the statutory provision for withholding of deportation to provide that such relief should not be available to an alien who, "having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." Former section 243(h)(2)(B) of the Act, 8 U.S.C. § 1253(h)(2)(B) (Supp. IV 1980). The term aggravated felony had not been incorporated into the Act at that time, and there were no statutory directives regarding the types of crimes that would or would not fall within the "particularly serious crime" category. *See* Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, § 7342, 102 Stat. 4181, 4469-70 (adding the term "aggravated felony" to the Immigration and Nationality Act). Even after the enactment of the aggravated felony definition, the question whether an offense was a particularly serious crime was not linked to the definition of an aggravated felony, and for more than a year the Board and Immigration Judges could examine any crimes to determine whether they were particularly serious under the Act.

In 1990, Congress linked particularly serious crimes to aggravated felonies. Congress amended section 243(h)(2) of the Act through the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, to provide that aggravated felonies are to be considered particularly serious crimes for purposes of section 243(h)(2). *See generally Matter of A-A-*, 20 I&N Dec. 492 (BIA 1992). The Immigration Act of 1990 rendered our decision in *Matter of Frentescu*, 18 I&N Dec. 244 (BIA 1982), which set forth the analysis for determining whether a crime was "particularly serious," inapplicable to many cases because certain offenses were automatically deemed to be particularly serious crimes as a result of their classification as aggravated felonies. *See Matter of C-*, 20 I&N Dec. 529 (BIA 1992). However, there was no suggestion that other crimes could not be treated as "particularly serious." As we noted in *Matter of C-*, *supra*, at 535 n.3, there would continue to be situations requiring a particularly serious crime determination under the analysis set forth in *Matter of Frentescu*, *supra*, "where the crime falls outside the definition of aggravated felony."

Congress first altered the link between particularly serious crimes and aggravated felonies with the passage of section 413(f) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, 1269 (enacted Apr. 24, 1996) ("AEDPA"). The AEDPA amended section 243(h) of the Act to give the Attorney General discretionary authority to

override the categorical bar designating every aggravated felony a particularly serious crime if the Attorney General determined it was "necessary to ensure compliance with the 1967 United Nations Protocol Relating to the Status of Refugees." *Id.* (codified at former section 243(h)(3)(B) of the Act). In other words, this change returned some of the authority taken away from the Attorney General in the Immigration Act of 1990 and permitted the Attorney General to find that certain aggravated felonies were not particularly serious crimes.

Shortly thereafter, Congress significantly altered the relationship between particularly serious crimes and aggravated felonies, as applied to withholding of removal, with the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, enacted as Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"). Section 305(a) of the IIRIRA, 110 Stat. at 3009-602, changed the definition of a "particularly serious crime" by adding the following language to section 241(b)(3) of the Act:

> For purposes of clause (ii) [setting forth the bar to withholding of removal for an alien convicted of a particularly serious crime], an alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime.

As we noted in *Matter of L-S-*, *supra*, at 650-52, this most recent revision of the "particularly serious crime" provision accomplished what section 413(f) of the AEDPA had not: it eliminated the categorical exception to withholding of removal for any alien convicted of an aggravated felony. At the same time, while Congress eliminated the statutory presumption that all aggravated felonies are particularly serious crimes for purposes of the withholding provision, it expanded the definition of an aggravated felony. *See, e.g.*, IIRIRA § 321(a), 110 Stat. at 3009-627 (codified at section 101(a)(43) of the Act).[4] Particularly serious crimes and aggravated felonies are no longer automatically linked for purposes of withholding of removal except for aggravated felonies for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years.

This brief historical review indicates that Congress intentionally withdrew much of its prior equation of particularly serious crimes with aggravated

---

[4] We noted in *Matter of L-S-*, *supra*, at 651 n.7, that we apply the relevant factors "to aggravated felonies where the sentence is fewer than 5 years, *as well as to other crimes that do not fall within the aggravated felony definition*." (Emphasis added.)

felonies in the withholding of removal context in order to allow a more flexible analysis in determining whether an offense is a particularly serious crime. At no time in our history, however, has the concept of a particularly serious crime been confined to the changing categories of aggravated felonies, notwithstanding the tendency toward expansion of the latter.

We recognize that the Third Circuit has held, within the context of precluding an alien from withholding of removal, that an offense must be an aggravated felony to be a particularly serious crime. *Alaka v. Att'y Gen.*, *supra*. However, we respectfully disagree with the Third Circuit's interpretation that section 241(b)(3)(B)(ii) of the Act defines the term "particularly serious crime" as a subset of aggravated felony offenses. That interpretation is not in accord with our original interpretation of the term, which has been in effect for more than a quarter of a century. Nor do we agree with the Third Circuit that such a result is dictated or suggested by the second sentence of section 305(a) of the IIRIRA quoted above. That sentence means only that aggravated felonies for which sentences of less than 5 years' imprisonment were imposed may be found to be "particularly serious crimes," not that *only* aggravated felonies may be found to be such crimes. *See Matter of Anselmo*, 20 I&N Dec. 25, 31 (BIA 1989) (stating that "[w]here we disagree with a court's position on a given issue, we decline to follow it outside the court's circuit").[5]

Furthermore, we find that Congress did not intend to limit what offenses may be particularly serious crimes to those offenses classified as aggravated felonies. When Congress established categories of aggravated felonies, it frequently referenced other provisions that contain technical requirements, such as crimes of violence under 18 U.S.C. § 16 (2000). Not all very serious offenses will meet all of the technical requirements that go along with classification as an aggravated felony under the Immigration and Nationality Act. Moreover, there may well be offenses that are particularly serious, yet fall totally outside the aggravated felony enumeration in section 101(a)(43) of the Act.[6] We do not read the statute, or the history leading up to the current language, as creating a gap or loophole for particularly serious crimes that happen to escape classification as aggravated felonies. To do so would be inconsistent with the goal of protecting the public, which is at the heart of the "particularly serious crime" bar.

---

[5] We need not decide here whether to follow *Alaka v. Attorney General*, *supra*, in the Third Circuit. *See Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Serv.*, 545 U.S. 967 (2005).

[6] *See, e.g.*, 18 U.S.C. § 175 (2000 & Supp. IV 2004) (relating to biological weapons); 18 U.S.C. § 1365 (2000 & Supp. IV 2004) (relating to tampering with consumer products).

### B.   Evidence That May Be Used in a
### Particularly Serious Crime Determination

Where, as in the instant case, a conviction is not for an aggravated felony for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years, we examine the nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of the conviction.  *See Matter of L-S-*, *supra*; *Matter of Q-T-M-T-*, 21 I&N Dec. 639 (BIA 1996).   On some occasions, we have focused exclusively on the elements of the offense, i.e., the nature of the crime.  *See*, *e.g.*, *Matter of Garcia-Garrocho*, 19 I&N Dec. 423 (BIA 1986) (looking at the elements of the offense of burglary in the first degree and finding that, on its face, such a crime is a particularly serious one); *see also Hamama v. INS*, 78 F.3d 233 (6th Cir. 1996) (noting that the Board may find some crimes to be per se particularly serious, without needing to examine the individual circumstances of the crime). However, we have generally examined a variety of factors and found that the "consideration of the individual facts and circumstances is appropriate." *Matter of L-S*, *supra*, at 651.

If the elements of the offense do not potentially bring the crime into a category of particularly serious crimes, the individual facts and circumstances of the offense are of no consequence, and the alien would not be barred from a grant of withholding of removal.  On the other hand, once the elements of the offense are examined and found to potentially bring the offense within the ambit of a particularly serious crime, all reliable information may be considered in making a  particularly serious crime determination, including the conviction records and sentencing information, as well as other information outside the confines of a record of conviction.  *Matter of L-S*, *supra*, at 654-56 (examining in detail the actual circumstances of the crime, well beyond what was disclosed by the elements of the crime, including information from other participants in the crime).

We note that our approach to determining whether a crime is particularly serious has evolved since the issuance of our decision in *Matter of Frentescu*, *supra*, which is cited in the respondent's brief.  For example, once an alien is found to have committed a particularly serious crime, we no longer engage in a separate determination to address whether the alien is a danger to the community.  As set forth in *Matter of Carballe*, 19 I&N Dec. 357 (BIA 1986), the proper focus for determining whether a crime is particularly serious is on the nature of the crime and not the likelihood of future serious misconduct. *See also Al-Salehi v. INS* 47 F.3d 390 (10th Cir. 1995) (upholding *Matter of Carballe*, *supra*); *Alaka v. Att'y Gen.*, *supra*, at 95 (same, citing unanimous court of appeals authority to this effect); *Matter of Q-T-M-T-*, *supra*, at 645-46. Consequently, we are not persuaded by the argument that the respondent

allegedly does not pose any future danger to members of the community and therefore was not convicted of a particularly serious crime.[7]

Likewise, in *Matter of Y-L-, A-G-, & R-S-R-*, 23 I&N Dec. 270, 273-74, 277-78 (A.G. 2002), the Attorney General found that the sentence imposed is not a dominant factor in determining whether a conviction is for a particularly serious crime. Factors that are subsequent and unrelated to the commission of the offense, such as cooperation with law enforcement authorities, bear only on sentencing. Similarly, offender characteristics may operate to reduce a sentence but do not diminish the gravity of a crime. Therefore, the sentence imposed is not the most accurate or salient factor to consider in determining the seriousness of an offense. For these reasons, we find no merit to the respondent's argument that the offense is not a particularly serious crime because a sentence to a term of imprisonment was not imposed.

We find that the respondent's offense is a particularly serious crime based solely on its elements, i.e., that the offense by its "nature" is a particularly serious one. In order to be convicted under sections 18-3-206(1)(a) and (b) of the Colorado Revised Statutes, a person must use, or represent that he or she is armed with, a deadly weapon and must knowingly place or attempt to place another person in fear of imminent serious bodily injury. Because the statutory provisions under which the respondent was convicted clearly require a serious threat to others, the offense is a crime against a person. We have held that crimes against persons are more likely to be categorized as particularly serious. *See Matter of L-S-*, *supra*, at 649. We therefore find that the respondent was convicted of a particularly serious crime.

Moreover, the evidence in the record relating to the respondent's offense supports our finding that the conviction is for a particularly serious crime. We note that the conviction record indicates that the respondent was required to register as a sex offender. Furthermore, the Statement in Support of Warrantless Arrest indicates that the respondent was performing a nonconsensual sexual act and subsequently threatened the victim with two knives. The respondent contends that the Immigration Judge erred in relying on the Statement in Support of Warrantless Arrest. We disagree. We find that we may examine all reliable information and are not limited to reviewing the record of conviction and sentencing information.

The respondent cites *Morales v. Gonzales*, 478 F.3d 972 (9th Cir. 2007), in which the Ninth Circuit found that an Immigration Judge erred in relying on the

---

[7] The respondent contends that there is no danger to the community because "the context of the crime indicates that [the respondent's] threats were primarily an aggressive defensive response to being physically attacked while being interrupted during a sex act." We note, however, that the sex act was not consensual on the victim's part.

facts recited in a Washington State appellate court opinion that were not admitted or established as the circumstances and underlying facts of the conviction.  However, the Ninth Circuit's opinion is based entirely on purported deference to our precedent decisions, which we respectfully find that the court misread.  The Ninth Circuit quoted our decision in *Matter of L-S-*, *supra*, stating that according to the Board, "it is permissible to 'look to the conviction records and sentencing information . . . [but] . . . not [to] engage in a retrial of the alien's criminal case or go behind the record of conviction to redetermine the alien's innocence or guilt.'"  *Morales v. Gonzales*, *supra*, at 981 (quoting *Matter of L-S-*, *supra*, at 651).  However, our decision in *Matter of L-S-*, did not prohibit the examination of other evidence or indicate that only conviction records and sentencing information could be used.  In fact, as previously noted, we examined in detail the actual circumstances of the crime, well beyond what is disclosed by the elements of the crime, including sentencing information and information from other participants in the crime. *Matter of L-S-*, *supra*, at 654-56.

It has been our practice to allow both parties to explain and introduce evidence as to why a crime is particularly serious or not.  We see no reason to exclude otherwise reliable information from consideration in an analysis of a particularly serious crime once the nature of the crime, as measured by its elements, brings it within the range of a "particularly serious" offense.  *See Matter of Babaisakov*, 24 I&N Dec. 306 (BIA 2007).  Our consistent practice in this regard has also been followed by the Attorney General.  *See Matter of Y-L-, A-G-, & R-S-R-*, *supra*.[8]  Furthermore, we point out that neither *Morales v. Gonzales*, *supra*, nor any other decision of which we are aware, has ever suggested that the categorical approach, used primarily in determining removability, is applicable to the inherently discretionary determination of whether a conviction is for a particularly serious crime.[9]  Nor does the

---

[8]   Insofar as *Matter of L-S-*, *supra*, at 651, referenced only "conviction records and sentencing information," its phraseology was less than comprehensive.  We do not retry the question of guilt as to the elements of an offense.  *See* section 101(a)(48)(A) of the Act (defining "conviction" in significant part to require a determination of guilt).  However, we do look beyond evidence that identifies only the elements in cases where the elements fit a category of a potentially particularly serious crime.  This is most notable, perhaps, as to aggravated felonies that carry imposed sentences of less than 5 years.  The elements do not change depending on the length of sentence, but the severity of the crime is not always reflected in the length of the sentence.

[9] The Supreme Court has applied the categorical approach in the aggravated felony context, where the determination has both criminal and immigration law application.  Furthermore, while both we and the courts of appeals have applied the categorical approach to other convictions having only immigration consequences, e.g., the question whether an offense is

(continued...)

respondent raise such a claim. Thus, the formulation wrongly attributed to the Board in *Morales v. Gonzales*, *supra*, makes no sense because there is no reason to restrict the use of reliable information to that used in sentencing once the strictures of the categorical approach are deemed not to apply.[10]

Lastly, the respondent contends that the Immigration Judge erred in comparing the conviction to that in *Matter of B-*, 20 I&N Dec. 427 (BIA 1991). However, the Immigration Judge only cited *Matter of B-* to set forth the standards for determining what constitutes a particularly serious crime.

Accordingly, the respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.

---

(...continued)

a crime involving moral turpitude, such categories of crimes may affect both removability and eligibility for relief. In contrast, the "particularly serious crime" determination affects *solely* eligibility for asylum and withholding of removal, on which the alien has the burden of proof, and represents the sort of inherently judgmental calculus, once the elements of the offense have been found to potentially bring it within the parameters of a particularly serious crime, that the categorical approach is unsuited to the determination. *See Navarro-Lopez v. Gonzales*, No. 04-70345, 2007 WL 2713211, at *18 (9th Cir. Sept. 19, 2007) (en banc) (Bea, J., dissenting) (contending that the categorical approach should have no application even to the crime involving moral turpitude question).

[10] The respondent also argues that the Statement in Support of Warrantless Arrest was improperly utilized because the Immigration Judge deprived the respondent of an opportunity to testify as to the circumstances of the crime and to cross-examine the author of the Statement. The argument is without merit. The Immigration Judge admitted the Statement in Support of Warrantless Arrest but stated that he would later deal with its contents "if the respondent denies the truthfulness of any of those statements." The respondent, who testified, never did so. Moreover, the Immigration Judge accepted an offer of proof that the respondent's brother would testify that when the respondent lived in his home there were no incidents of violence or improper sexual contact. The Immigration Judge did not err in admitting the Statement in Support of Warrantless Arrest. *See Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 823-24 (9th Cir. 2003); *Bustos-Torres v. INS*, 898 F.2d 1053 (5th Cir. 1990); *Matter of Gomez-Gomez*, 23 I&N Dec. 522 (BIA 2002); *see also Matter of Thomas*, 21 I&N Dec. 20 (BIA 1995).