[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15426
Non-Argument Calendar
_____

Agency No. A097-611-243

MAXI DINGA SOPO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(June 25, 2018)

Before MARCUS, ROSENBAUM and HULL, Circuit Judges.

PER CURIAM:

Maxi Dinga Sopo seeks review of his final order of removal to Cameroon. In his petition for review, Sopo argues that the Board of Immigration Appeals ("BIA") and the Immigration Judge ("IJ") committed legal error in determining (1) that his federal bank fraud conviction constituted a "particularly serious crime" rendering him ineligible for withholding of removal under the INA and (2) that he had not shown a likelihood of torture, for purposes of relief under the United Nations Convention Against Torture ("CAT"), 8 C.F.R. § 208.16(c), if he was returned to Cameroon. After review, we find no legal error in either of these determinations and deny Sopo's petition.[1]

## I.  BACKGROUND FACTS

In 2003, Sopo, a native and citizen of Cameroon, entered the United States on a tourist visa. In 2004, Sopo was granted asylum based on his application claiming political and religious persecution in Cameroon.

According to Sopo's 2004 asylum application, Sopo, while a university student in Cameroon, participated in the Southern Cameroons National Council ("SCNC") and the Southern Cameroons Youth League ("SCYL"), organizations that engaged in political activities challenging Cameroon's ruling regime.[2] Sopo

---

[1]On January 24, 2018, Sopo was removed from the United States to Cameroon. See Sopo v. United States Att'y Gen., 890 F.3d 952, 953 (11th Cir. 2018).

[2]The SCNC advocates for independence for the English-speaking southwest corner of Cameroon from the rest of Cameroon, which is French-speaking.

also refused to comply with his village's tribal traditions and to convert to Islam, instead becoming involved with the Bali Catholic Youth Organization.

Due to his association with these organizations, Sopo said that the police arrested, beat, and mistreated him in January 2000 and March 2002. In October 2002, Sopo was again arrested and held for two months. Sopo claimed that, during this detention, he was beaten, deprived of food, light, or medication, and held in unsanitary conditions. Sopo asserted that because of his activism and his involvement in the SCNC, he was "a likely target for arrest, imprisonment, torture, and certain death" if he returned to Cameroon.

In August 2010, six years after being granted asylum, Sopo pled guilty in federal court to four counts of bank fraud, in violation of 18 U.S.C. § 1344. Sopo received a 33-month sentence and was ordered to pay $147,249.92 in total restitution, of which Sopo was: (1) solely liable for $23,354 in restitution to one of the three credit-union victims; and (2) jointly and severally liable with his two codefendants for $51,006.15 and $72,889.77 to the other two credit unions, respectively.

In January 2012, the Department of Homeland Security ("DHS") issued a Notice to Appear charging Sopo with removability, pursuant to INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), for having been convicted of an aggravated felony, as defined in INA § 101(a)(43)(M), 8 U.S.C. § 1101(a)(43)(M),

relating to a fraud offense in which the loss to the victim exceeded $10,000.  At a March 2012 master calendar hearing before an Immigration Judge ("IJ"), Sopo conceded the charge of removability.

In April 2012, Sopo filed a second application for asylum, withholding of removal, and CAT relief.  Sopo's new asylum application was "barebones," consisting of only his name, social security number, and alien number, because he elected to proceed based on his claims in his 2004 asylum application.[3]  Sopo also filed an application for adjustment of status with a waiver pursuant to INA § 209(a), 8 U.S.C. § 1159(c) ("209(a) waiver") on humanitarian grounds.

Sopo's subsequent immigration proceedings were protracted and will not be recounted here, as they have no bearing on the two legal issues raised in Sopo's current petition for review.  Ultimately, the IJ terminated Sopo's asylee status, denied all requested relief, and ordered him removed.  Relevant to this appeal, the IJ concluded, and the Bureau of Immigration Appeals ("BIA") agreed, that Sopo's bank fraud convictions were "particularly serious" crimes under INA § 241(b)(3)(B)(ii), 8 U.S.C. § 1231(b)(3)(B)(ii), that rendered him ineligible for withholding of removal.

---

[3]Although Sopo's 2004 application asserted claims of both political and religious persecution, he appears to have abandoned his religious persecution claim at some point in the 2012 proceedings and does not raise it with this Court.

4

The IJ also denied Sopo's request for deferral of removal under CAT.  The IJ concluded that Sopo had "suffered mistreatment in the past" and that the "mistreatment [was] sufficient to constitute past persecution on account of his political opinion," but that his arrest, detention, and prosecution of SCNC members did not amount to torture.  The IJ further concluded that the occasional incidences of human rights abuses, which the Cameroonian government sought to combat, did not prove that it was more likely than not that Sopo would be tortured if returned to Cameroon.

On appeal, the BIA determined that the IJ "properly and thoroughly assessed both whether [Sopo] demonstrated a likelihood of torture by public officials (or those persons acting in an official capacity), as well as the likelihood that public officials (or those acting in an official capacity) would consent to or acquiesce in his torture, and [the IJ] correctly found that [Sopo] did not meet his burden of proof[.]"

## II.  DISCUSSION

Sopo's petition for review raises two discrete claims of legal error.  First, Sopo argues that the BIA and the IJ erred in determining that Sopo was ineligible for withholding of removal because they applied the wrong legal standard to find that his federal bank fraud convictions constituted "particularly serious" crimes.  Second, Sopo argues that the BIA and IJ erred in denying him CAT protection

5

because they failed to determine first whether Sopo had suffered past torture and to give reasoned consideration to his CAT claim.[4]  We address each contention in turn.

## A.    "Particularly Serious Crime" Bar to Withholding of Removal

An alien is ineligible for either asylum or withholding of removal under the INA if the Attorney General decides that "the alien, having been convicted by a final judgment of a particularly serious crime constitutes a danger to the community of the United States."  See INA § 208(b)(2)(A)(ii), 8 U.S.C. § 1158(b)(2)(A)(ii) (asylum); INA § 241(b)(3)(B)(ii), 8 U.S.C. § 1231(b)(3)(B)(ii) (withholding of removal).  Congress has further provided:

> [A]n alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime.

INA § 241(b)(3)(B), 8 U.S.C. § 1231(b)(3)(B) (emphasis added).  Thus, a conviction for an aggravated felony resulting in a prison sentence of at least five years is per se a particularly serious crime, and when a conviction "is not a per se particularly serious crime, the Attorney General retains discretion to determine on

---

[4]We note that Sopo's petition for review does not challenge: (1) his removability due to his conviction for bank fraud; (2) the termination of his 2004 asylee status because his bank fraud convictions were for an aggravated felony; (3) the denial of his 2012 application for asylum for the same reason; or (4) the denial of his application for a 209(c) waiver.

a case-by-case basis whether the offense constitute[s] a particularly serious crime." Lapaix v. U.S. Att'y Gen., 605 F.3d 1138, 1143 (11th Cir. 2010).

The BIA has held that the statute does not require an offense to be an aggravated felony in order for it to be considered a "particularly serious" crime. In re N-A-M-, 24 I. & N. Dec. 336, 338 (BIA 2007). In addition, both the BIA and this Court have clarified that the statute does not require two separate findings: "first that the alien committed a particularly serious crime, and second that the alien constitutes a danger." Crespo-Gomez v. Richard, 780 F.2d 932, 934 (11th Cir. 1986); In re R-A-M-, 25 I. & N. Dec. 657, 662 (BIA 2012). Instead, the statute requires only a single finding that the alien has been convicted of a "particularly serious crime." Crespo-Gomez, 780 F.2d at 934-35; In re R-A-M-, 25 I. & N. Dec. at 662.

In making the particularly-serious-crime determination, the IJ and the BIA may focus solely on the elements of the offense. See In re N-A-M-, 24 I. & N. Dec. at 342. However, the IJ and the BIA generally consider "a variety of factors" including "the nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of the conviction." Id.; Lapaix, 605 F.3d at 1143-44.[5]

---

[5]Because the BIA agreed with the IJ's determination that Sopo's bank fraud convictions were particularly serious crimes, we review both the IJ's and the BIA's decisions. See Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1350 (11th Cir. 2009). Ordinarily we review

Here, the IJ and the BIA applied the correct legal standard and committed no legal error in determining that Sopo's bank fraud convictions were particularly serious crimes. The IJ first determined that Sopo's bank fraud convictions, although aggravated felonies, were not per se particularly serious crimes because Sopo did not receive a prison sentence of more than five years. Next, the IJ correctly identified the factors the immigration court considers in determining whether a conviction constitutes a particularly serious crime. In determining that Sopo's bank fraud crimes were particularly serious, the IJ assessed the nature and circumstances of his bank fraud in relation to the harm that it caused the victims, the exploited accomplices, and the community.

Specifically, the IJ extensively detailed the nature and circumstances of Sopo's fraudulent car-loan scheme, which "solicited nominal buyers to make false statements about their employment and income to 'induce the Credit Unions to approve the fraudulent applications' for loans," and involved the exploitation of "numerous people, credit unions, and business ventures." The IJ pointed out the length of the fraud scheme (five years), the total amount of the fraud

---

the IJ's and the BIA's discretionary decisions to determine whether discretion was exercised in an arbitrary or capricious manner. See Abdi v. U.S. Att'y Gen., 430 F.3d 1148, 1149 (11th Cir. 2005), overruled on other grounds by Avila-Santoyo v. U.S. Att'y Gen., 713 F.3d 1357, 1362 (11th Cir. 2013). Here, however, Sopo is removable by reason of his pleading guilty to an aggravated felony. Thus, we lack jurisdiction to review the discretionary decision except to the extent Sopo raises a question of law or constitutional claim, which we review de novo. See INA § 242(a)(2)(C)-(D), 8 U.S.C. § 1252(a)(2)(C)-(D); Jean-Pierre v. U.S. Att'y Gen., 500 F.3d 1315, 1320 (11th Cir. 2007). Thus, we review only Sopo's claim that the IJ and the BIA applied the wrong legal standard and not whether they abused their discretion.

8

($142,249.02), and the portion for which Sopo was individually liable ($23,534) under the criminal judgment. The IJ also noted that Sopo's actions resulted in numerous individuals being saddled with "debt beyond their means" and increased unpaid debts to the victim financial institutions, all "on the heels of a national banking crisis and a recession." The BIA, in affirming the IJ's determination, likewise focused on the nature and circumstances of Sopo's bank fraud scheme and stressed that Sopo received a 33-month sentence. Contrary to Sopo's claims, the IJ and the BIA were not required to make an explicit, separate finding that Sopo posed a danger to the community. See Crespo-Gomez, 780 F.2d at 934-35; In re R-A-M-, 25 I. & N. Dec. at 662.

Sopo argues that the IJ's and the BIA's particularly-serious-crime determination is inconsistent with their determination that Sopo was not a "violent or dangerous" individual for purposes of a § 209(c) waiver. This argument is tantamount to a claim that the particularly-serious-crime determination was arbitrary and capricious, a claim we lack jurisdiction to review in Sopo's case. See INA § 242(a)(2)(C)-(D), 8 U.S.C. § 1252(a)(2)(C)-(D). In sum, the IJ and the BIA applied the correct legal standard in determining that Sopo was barred from obtaining withholding of removal because his bank fraud conviction was a particularly serious crime.

## B.    Request for CAT Relief

To qualify for CAT relief, an alien must prove that it is more likely than not that he would be tortured by, or with the consent or acquiescence of, a public official or person acting in an official capacity upon return to his country.  Najjar v. Ashcroft, 257 F.3d 1262, 1303 (11th Cir. 2001).  The regulations require that "all evidence relevant to the possibility of future torture shall be considered, including, but not limited to . . . [e]vidence of past torture inflicted upon the applicant."  8 C.F.R. § 1208.16(c)(3)(i).

Citing § 1208.16(c)(3), Sopo argues that the IJ and the BIA were required to make an explicit determination as to whether his past mistreatment in Cameroon amounted to torture.[6]  By its express terms, § 1208.16(c)(3) does not require the IJ and the BIA to make such a determination.  Rather, § 1208.16(c)(3) requires the IJ and the BIA to consider all relevant evidence of the possibility of future torture, including any evidence that the applicant was tortured in the past.

Here, the IJ, as required by § 1208.16(c)(3), extensively detailed the treatment Sopo endured at the hands of the Cameroonian police in 2002, including, but not limited to, evidence that: (1) officers searching for Sopo to arrest him

---

[6]We reject the government's argument that we lack jurisdiction to review this CAT issue because Sopo failed to exhaust it before the BIA.  In his pro se brief before the BIA, Sopo argued that he was previously tortured in Cameroon under the applicable regulations and precedent and that the IJ should have "reassessed" whether he was subjected to past torture.  We note, however, that Sopo does not now challenge the IJ's and the BIA's ultimate determination that he failed to meet his burden to show a likelihood that he would be subjected to torture if returned to Cameroon.

10

harassed, tortured, and brutalized his family; (2) Sopo was arrested and detained "under very unhygienic conditions"; (3) Sopo was stripped to his underwear, doused with cold water, beaten with a cane, hung upside down, and received electrical shocks to the soles of his feet two or three times a day; (4) Sopo was starved and forced to drink his own urine; and (5) as a result, Sopo was hospitalized and suffered from amnesia, bruising, and spinal abnormalities. The IJ acknowledged the brutality of Sopo's past treatment in 2002 and that it amounted to past persecution on account of political opinion, but concluded that Sopo's "past treatment is insufficient, without more, to entitle [Sopo] to relief in this instance." The BIA agreed. Sopo does not identify any past mistreatment that the IJ or the BIA failed to consider in concluding that he was not entitled to CAT relief.

Additionally, although Sopo argues otherwise, the IJ and the BIA gave reasoned consideration to Sopo's CAT claim. See Indrawati v. U.S. Att'y Gen., 779 F.3d 1284, 1302 (11th Cir. 2015) (explaining that the IJ and the BIA give "reasoned consideration" when they "considered the issues raised and announced their decisions in terms sufficient to enable review"). Specifically, the IJ explained, and the BIA agreed, that despite Sopo's evidence of past mistreatment as an SCNC member, more recent evidence from 2013, including articles submitted by Sopo and the Country Report for Cameroon, indicated that: (1) while there were reports of SCNC members who participated in SCNC activities being

11

arrested and detained, there was no indication they were tortured; (2) Cameroonian law prohibits organizations, like SCNC, from advocating for secession, and the Cameroonian government's arrest and detention of SCNC members was not torture, but rather was treatment that arose from and was incidental to lawful sanctions, or "'judicially imposed sanctions and other enforcement actions authorized by law'"; (3) prison conditions in Cameroon were harsh and life threatening, but were not directed solely at SCNC members; and (4) the constitution and law of Cameroon prohibited torture and, despite reports of security forces torturing, beating, and harassing prisoners and detainees, the government had taken significant measures beginning in 2012 to combat such activities.  Accordingly, both the IJ's and the BIA's decisions reflect reasoned consideration of Sopo's CAT claim.

Finally, the IJ and the BIA did not improperly rely upon State Department reports.  See Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1243 (11th Cir. 2004) (stating that the BIA is "entitled to rely heavily" on State Department reports in the record).  Both the IJ and the BIA noted that, according to the 2013 Country Report, Cameroonian authorities had interrupted some SCNC meetings and arrested its members, but that there was no indication the SCNC members were tortured.  The IJ and the BIA also consistently pointed to the facts in the 2013 Country Report that: (1) the Cameroonian authorities' actions in interrupting

12

meetings and arresting members arose from or were inherent or incidental to lawful sanctions; (2) harsh prison treatment and conditions were not directly solely at SCNC members; and (3) the Cameroonian constitution prohibits torture, and the Cameroonian government sought to prevent torture.

Although the BIA further noted that the 2014 and 2015 Country Reports did not discuss any issues between the Cameroonian government and the SCNC, including arrests, detentions, or mistreatment of SCNC members, we disagree with Sopo that the BIA relied on this one point to discredit Sopo or negate his CAT claim. Cf. Gaksakuman v. U.S. Att'y Gen., 767 F.3d 1164, 1171 (11th Cir. 2014) (granting an alien's petition for review and remanding for further proceedings where the IJ and the BIA relied on silence in the State Department reports to rebut the alien's evidence that failed asylum seekers were tortured in Sri Lanka and explaining that State Department reports are reliable only to the extent they comment upon or are relevant to the specific questions raised by the applicant).

**PETITION DENIED.**

13