NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0498n.06

No. 22-3333

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| BONANE MBANJIMBERE, | ) | **FILED**<br>Dec 05, 2022<br>DEBORAH S. HUNT, Clerk |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| MERRICK B. GARLAND, Attorney General, | ) | BOARD OF IMMIGRATION |
| Respondent. | ) | APPEALS |
| | ) | |

Before: LARSEN, DAVIS, and MATHIS, Circuit Judges.

LARSEN, Circuit Judge. The Department of Homeland Security initiated removal proceedings against Bonane Mbanjimbere. Mbanjimbere applied for asylum, withholding of removal, and protection under the Convention Against Torture. An Immigration Judge denied relief and ordered Mbanjimbere removed to the Democratic Republic of Congo. The BIA affirmed without an opinion. We DENY Mbanjimbere's petition for review.

I.

Bonane Mbanjimbere was born in the Democratic Republic of Congo (DRC) in 2000. Two years later, his family fled to a refugee camp in Rwanda, where he lived until he and his family entered the United States in 2014 as refugees. Mbanjimbere's father told him that they had fled the DRC "because of genocide against Tutsi and Banyamulenge" by the Hutus. Mbanjimbere testified that he was a member of both the Tutsi and Banyamulenge ethnic groups and speaks only Kinyarwanda. He feared that upon returning to the DRC, he would be killed because the "people in the [DRC] don't like . . . people who speak Kinyarwanda."

Mbanjimbere doesn't have any family in the DRC; his aunt, uncle, and grandparents were all killed, but Mbanjimbere doesn't know by whom. Mbanjimbere's parents and siblings all live in the United States, apart from his older brother, who was deported approximately five years ago. Mbanjimbere doesn't know his brother's country of deportation. While Mbanjimbere thinks his brother is somewhere in Africa, he doesn't know where, and no one in his family has heard from him since he was deported. Mbanjimbere was admitted to the United States as the child of a refugee, and his status was adjusted in 2016 to that of a lawful permanent resident.

Mbanjimbere was convicted in Michigan juvenile court of criminal sexual conduct in the fourth degree (CSC-4th) in 2017. He was again convicted of CSC-4th in 2018, this time as an adult, when he sexually assaulted a stranger in a grocery store while the victim's young child sat in the shopping cart. He pleaded guilty to resisting arrest in 2021 and has had several other run-ins with law enforcement over the past few years. Mbanjimbere testified that all the incidents were due to a severe alcohol problem.

DHS commenced removal proceedings against Mbanjimbere in 2021 on the ground that he was removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(i) as a noncitizen who was convicted of a crime involving moral turpitude within five years after admission for which a sentence of one year or longer may be imposed (his 2018 CSC-4th conviction). Mbanjimbere conceded removability but sought relief in the form of asylum, withholding of removal, and protection under the Convention Against Torture (CAT). After a hearing, an Immigration Judge (IJ) denied the requests for relief and ordered Mbanjimbere removed to the DRC. The IJ found him ineligible for asylum and withholding of removal because his 2018 CSC-4th conviction constituted a "particularly serious crime." *See* 8 U.S.C. §§ 1158(b)(2)(A)(ii), 1231(b)(3)(B)(ii). The IJ also found that Mbanjimbere wasn't entitled to protection under the CAT because he failed to show that it was

more likely than not that he would be tortured on return to the DRC. The BIA affirmed without an opinion. Mbanjimbere now petitions for review. Because the BIA affirmed without an opinion, the IJ's decision provides "the reasoned explanation needed for review." *See Denko v. I.N.S.*, 351 F.3d 717, 729 (6th Cir. 2003).

II.

*Particularly Serious Crime*. The IJ determined that Mbanjimbere was ineligible for asylum or withholding of removal because his 2018 Michigan conviction for CSC-4th was a "particularly serious crime" such that Mbanjimbere "constitutes a danger to the community of the United States." 8 U.S.C. §§ 1158(b)(2)(A)(ii), 1231(b)(3)(B)(ii). Congress has determined that some offenses are particularly serious *per se.* For asylum, a "particularly serious crime" is "an aggravated felony," and for withholding of removal it is "an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years." *Id.* §§ 1158(b)(2)(B)(i), 1231(b)(3)(B)(iv). But even if a crime doesn't fit the *per se* definition, the Attorney General may nonetheless decide that "an alien has been convicted of a particularly serious crime." *Id.* § 1231(b)(3)(B)(iv); *see also Bastardo-Vale v. Att'y Gen.*, 934 F.3d 255, 264–65 (3d Cir. 2019) (en banc) ("[U]nder the asylum statute, . . . the Attorney General retains the authority . . . to deem that alien to have committed a particularly serious crime."). The Attorney General does so on a case-by-case basis through decisions of the BIA, *Hernandez-Vasquez v. Holder*, 430 F. App'x 448, 451 (6th Cir. 2011), considering "the nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of the conviction," *id.* at 451–52 (quoting *In re N-A-M-*, 24 I. & N. Dec. 336, 342 (B.I.A. 2007)). If the "elements of the offense are . . . found to potentially bring the offense within the ambit of a particularly serious crime, all reliable

information may be considered in making a particularly serious crime determination." *Id.* (quoting *N-A-M-*, 24 I. & N. Dec. at 342).

The government points out that, under our caselaw, the BIA's determination is entitled to "substantial deference." *Saleh v. Sessions*, 756 F. App'x 502, 508 (quoting *Sanchez-Robles v. Lynch*, 808 F.3d 688, 692 (6th Cir. 2015)).  Our cases hold that "Congress has expressed no clear intent regarding the meaning of 'particularly serious crime,'" such that we owe *Chevron* deference to the BIA's determination on that score.  *Hamama v. I.N.S.*, 78 F.3d 233, 239 (6th Cir. 1996).  Under this standard, we may set aside the agency's decision only if it was "arbitrary, capricious, or manifestly contrary to the statute."  *Id.*; *Saleh*, 756 F. App'x at 508.  Mbanjimbere doesn't contest that conclusion.  *But see United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001) (*Chevron* deference appropriate only when agency interpretation carries the force of law).  The Seventh Circuit has concluded that, after *Mead*, non-precedential BIA decisions are not entitled to deference, unless they are "merely applying reasoning that already carries precedential weight." *Arobelidze v. Holder*, 653 F.3d 513, 519–20 (7th Cir. 2011). The single-member BIA opinion we review here may fall within that category as it applies the BIA's precedential opinion in *In re N-A-M-*.  But even if *Chevron* deference doesn't apply, *Skidmore* deference likely would.  *Id.* at 520. *Skidmore* instructs us to consider "the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."  *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).  Mbanjimbere's counseled appellate briefing gives us no reason to upset the BIA's determination even under this less-deferential standard.

Following BIA precedent, the agency first examined the elements of Mbanjimbere's crime of conviction.  Under Mich. Comp. Laws § 750.520e(1)(b), a person is guilty of CSC-4th if he

"engages in sexual contact with another person" and "[f]orce or coercion is used to accomplish the sexual contact." The agency reasonably determined that these elements bring a conviction for CSC-4th within the "ambit of a particularly serious crime." *Saleh*, 756 F. App'x at 508. Mbanjimbere doesn't contest that conclusion.

Mbanjimbere instead suggests that the agency erred in its consideration of the facts and circumstances surrounding his particular act of sexual assault. He argues, for example, that the crime couldn't be serious because he didn't penetrate the victim or succeed in actually touching her vagina. But the IJ pointed out that Mbanjimbere committed "two illegal sexual contacts; first when [he] grabbed the buttocks of this woman while her back was turned," and then, rather than "end[ing] the attack" when she startled, he "aggravated it by cupping his hands and coming in from behind and grabbing the victim in the vagina area and placing his hand in between her legs." And to make matters worse, he did so in the middle of a grocery store and in the presence of the victim's young child, who was sitting in the shopping cart. Mbanjimbere points to no decision of the BIA or of any court suggesting that actual penetration or vaginal contact (rather than contact "in the vaginal area") is required. *See Skidmore*, 323 U.S. at 140 (noting that courts should consider consistency with prior agency rulings). Indeed, courts have upheld "particularly serious crime" designations under similar circumstances. *See Hernandez-Vasquez*, 430 F. App'x at 452–53; *Grijalva Martinez v. Att'y Gen.*, 978 F.3d 860, 870–71 (3d Cir. 2020).

Mbanjimbere argues that his offense wasn't serious because of his alcohol problem and says that he won't be a danger to the community because he plans to seek treatment. But the IJ reasonably concluded that his alcohol abuse aggravated the seriousness of the offense: it created "even a more dangerous situation because you ha[d] someone so intoxicated that they [were] willing to engage in a serious sexual assault and being so intoxicated, there [was] frankly no limit

as to what potentially could have happened." Mbanjimbere again offers no reason to fault the IJ's reasoning or his conclusion.

Lastly, Mbanjimbere claims that his offense wasn't serious because he was sentenced only to probation. Here, he is just wrong. Mbanjimbere was sentenced to 270 days' imprisonment, although the sentence was suspended pending completion of a sentence-reduction program. And, again, he offers no support for the proposition that a crime may not be considered serious under these circumstances. Indeed, "the Attorney General found that the sentence imposed is not a dominant factor in determining whether a conviction is for a particularly serious crime." *N-A-M-*, 24 I & N Dec. at 343 (citing *Matter of Y-L-*, 23 I & N Dec. 270, 273–74, 277–78 (A.G. 2002)). And following *Matter of Y-L-*, the BIA rejected the "argument that [an] offense is not a particularly serious crime because a sentence to a term of imprisonment was not imposed." *Id.* Mbanjimbere has failed to establish that the agency erred by concluding that his CSC-4th conviction constitutes a "particularly serious crime" precluding him from asylum or withholding of removal.

*Protection under the Convention Against Torture.* Mbanjimbere next challenges the IJ's denial of protection under the CAT. We review the IJ's legal conclusions de novo and his factual findings for substantial evidence. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). Those findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

To be eligible for protection under the CAT, an alien must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). An alien must face a "particularized threat of torture," *Marqus v. Barr*, 968 F.3d 583, 591 (6th Cir. 2020) (quotation omitted), "inflicted by, or at the instigation of, or with the

consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity," 8 C.F.R. § 1208.18(a)(1).

To begin, we must identify what documentary evidence is before us. Mbanjimbere submitted several reports and articles regarding the conditions in the DRC, but the IJ found that all but two (reports by the State Department and the Human Rights Watch) carried little or no weight, largely due to concerns regarding the dates, authenticity, or validity of the publications. Mbanjimbere doesn't challenge the IJ's decision to discount all but two of his articles and reports, so he has forfeited any argument that they should be considered in deciding whether he has established a particularized threat of torture. *See United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006).

With that housekeeping matter out of the way, the remaining evidence doesn't compel the conclusion that Mbanjimbere would be tortured upon his return to the DRC. The State Department and Human Rights Watch reports don't establish that Mbanjimbere faces a particularized risk of torture due to his Tutsi or Banyamulenge ethnicities or as a Kinyarwanda-speaker. While the reports no doubt establish that there is widespread violence through the DRC, they don't mention the Tutsi or Banyamulenge tribes or Kinyarwanda speakers.

Mbanjimbere points to the portion of the Human Rights Watch report that says armed groups have attacked civilians in South Kivu, an area that he says is highly populated by the Banyamulenge tribe. But the report doesn't indicate that those civilians were attacked because of their Banyamulenge ethnicity. Further, the report says that the armed groups also attacked civilians in eastern Congo, North Kivu, and the Ituri Province, suggesting that the link is not Banyamulenge ethnicity.

Mbanjimbere also points to the fact that after his brother was deported, he "was never heard from again." Petitioner Br. at 14. But Mbanjimbere also doesn't know where his brother was deported and says that he thinks his brother "is in Africa." *Id.* at 6. Nor does he have any evidence that his brother's disappearance was based on his ethnicity or the fact that he was a Kinyarwanda speaker. Mbanjimbere also mentions that his father told him that "most of their family was killed" when living in the DRC. *Id.* But those murders, while tragic, occurred before Mbanjimbere fled the DRC in 2002, over twenty years ago, and thus offer no evidence of the current conditions in the DRC. In sum, Mbanjimbere hasn't shown that the evidence compels the conclusion that he more likely than not will be tortured on return to the DRC.

\* \* \*

We DENY the petition for review.