[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10227
Non-Argument Calendar

_____

Agency No. A200-233-196


HENRY CAZARES-ZANDRE,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

No. 18-12713
Non-Argument Calendar

_____

Agency No.  A200-233-196


HENRY CAZARES-ZANDRE,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

—————————————————

Petitions for Review of a Decision of the
Board of Immigration Appeals
—————————————————

(October 31, 2019)

Before NEWSOM, BRANCH, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Henry Cazares-Zandre, a native and citizen of Honduras, brings these consolidated petitions for review. She[1] first seeks review of the Board of Immigration Appeals's ("BIA") order affirming the Immigration Judge's ("IJ") denial of her applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). She also seeks review of the BIA's order denying her motion for reconsideration. For the following reasons, we dismiss in part and deny in part Cazares-Zandre's petitions for review.

## I. BACKGROUND

### A. Cazares-Zandre's Entry into the United States and 2015 Arrest

---

[1] Cazares-Zandre, born biologically male, identifies as female. The parties and the immigration courts use female pronouns to refer to Cazares-Zandre. For ease of reference, we do the same. In addition, although her name has been spelled differently at various points in the record, she states in her briefing that Henry Cazares-Zandre is her preferred spelling.

Department of Homeland Security ("DHS") records indicate that Cazares-Zandre, a citizen and national of Honduras, entered the United States without admission or parole in 2005.[2]

Unfortunately, Cazares-Zandre's time in the United States has involved numerous charges and arrests for offenses including cocaine possession, theft, prostitution, and assault on a custodial officer. But one arrest and conviction are relevant here. A Maryland police report from April 2015 reveals the following. A patron at a restaurant believed that Cazares-Zandre had taken his cell phone, and an argument ensued. Cazares-Zandre reached into her purse and pulled out a kitchen knife. She approached the patron and the restaurant owner, who had tried to deescalate the situation. Cazares-Zandre made death threats while pointing the knife, and the owner protected himself and the patron with a bar stool. The responding officer "immediately recognized [Cazares-Zandre] from previous incidents." When the officer attempted to detain Cazares-Zandre, she was belligerent, uttering death threats and curse words and trying to bite the officer's arm. Cazares-Zandre scratched the officer's arms with her nails while he handcuffed her. Cazares-Zandre continued to resist, kicking and spitting at the officers on the scene. While being transported to jail, Cazares-Zandre tried to bite the officer who was driving—nearly causing the officer to lose control of the

---

[2] Cazares-Zandre later testified that she arrived in 2009.

3

vehicle.  At the same time, Cazares-Zandre began to kick the front windshield, causing it to crack.  Cazares-Zandre scratched another officer, was transported to another vehicle, and continued to spit on officers until taken into custody.[3] Cazares-Zandre pleaded guilty to concealing a dangerous weapon.[4]

## B.  Proceedings in the Immigration Courts

Cazares-Zandre has also had a distinctive history in the immigration courts, including absconding from electronic monitoring and failing to appear for prior proceedings.  But the proceedings relevant here began in February 2017, when DHS issued Cazares-Zandre a notice to appear, charging her with being an alien present in the United States without being admitted or paroled.

Cazares-Zandre applied for asylum, withholding of removal, and CAT relief. In support of the application, Cazares-Zandre provided details on her past treatment in Honduras.  Cazares-Zandre stated she fled Honduras because of severe mistreatment stemming from her sexual orientation as a gay man.  She was bullied in school and regularly beaten by her classmates, neighbors, and father because of (what she calls) her feminine conduct.[5]  At age 11, she had a sexual

---

[3] The police report states that the responding officer "had the opportunity to review surveillance footage from inside the restaurant and confirmed the incident."  Cazares-Zandre's testimony before the IJ largely confirms the events as described here, including her aggressiveness toward the patron, owner, and officers, although she says the cell phone was actually hers.

[4] The other 13 charges, including five for second-degree assault, were dropped.

[5] When testifying before the IJ, Cazares-Zandre stated the men who beat her knew she was "transgender or transsexual" because she would "dress at home in women's clothing" and

4

relationship with a 19-year-old man.  At age 13, she was threatened by a man with a machete who said he hated gay people.[6]  At about age 14, a man she knew hit her with a lasso.  When she was 17, she decided her life was unbearable and fled to the United States.  After arriving in the United States, she began her transition from male to female.

Cazares-Zandre argued that she could not return to Honduras because of her new status as a transgendered woman.  As she stated in her declaration, "In Honduras there are many people who hate gay people.  They hate transgendered people even more.  The police do not intervene in any cases of abuse."  Her application was starker still: "I am afraid of torture because it is known that the police in Honduras harm transgendered women and kill them, leaving mutilated bodies."

Cazares-Zandre attached numerous items to bolster the assertions in her application.  The United States State Department's Country Report on Human Rights Practices for 2011–Honduras states that serious problems include "corruption within the national police force, institutional weakness of the judiciary, and discrimination and violence against vulnerable populations."  With respect to abuses based on sexual orientation and gender identity, the report notes that

---

wear her hair long.  She later changed her testimony and stated that she would also dress like a woman outside the house.

[6] She would later testify that this man tried to rape her.

Honduras has no discriminatory laws in place, "but in practice social discrimination against persons from sexual minority communities [is] widespread." The national police reported 30 deaths of LGBT individuals during the year, although ascertaining the true number was difficult because LGBT individuals frequently conceal their sexual orientation.

Cazares-Zandre later supplemented her application with the State Department's 2016 Country Report, which noted that Honduran law now protected individuals based on sexual orientation and gender identity. Nevertheless, social discrimination remained widespread. From 2009 through 2016, at least 218 LGBT individuals were murdered; of the investigations into those murders, only 14 had resulted in convictions. But there were signs of progress: in 2016, the national police assigned 30 new agents to the task force designed to investigate these homicides. Moreover, the national police took steps to educate its personnel on how "to respond more effectively to cases of gender-based violence and violence against LGBTI persons." A new module on LGBT violence reduction was introduced for all new police recruits.

Cazares-Zandre also attached various publications that reported on discrimination, physical abuses, and murders inflicted on transgendered and homosexual men and women in Honduras—and the government's failure to investigate or intervene. Finally, Cazares-Zandre supplied the Human Rights

6

Watch January 2017 Country Summary on Honduras, which explained that "[r]ampant crime and impunity for human rights abuses remain the norm in Honduras" and that LGBT individuals were "among those most vulnerable to violence." "Marred by corruption and abuse, the judiciary and police remain largely ineffective."

At the June 2017 merits hearing before the IJ, Cazares-Zandre testified that she had regularly been beaten until she was 14 years old. She said men in Honduras, including the police, had told her if she returned they would kill her. Although at one point she stated the police never physically harmed her, she later testified that, when she was 11, they hit her with an ant-filled stick. When she came to the United States, she was homeless and, for about three years, earned money as a prostitute. The rest of her testimony covered various issues discussed above.

Later that month, the IJ issued a written decision denying Cazares-Zandre's application. The IJ determined, based on the offense elements and circumstances, that Cazares-Zandre's conviction for concealing a dangerous weapon was a "particularly serious crime," barring her from asylum or withholding of removal under 8 U.S.C. §§ 1158(b)(2)(A), 1231(b)(3)(B). With respect to CAT relief, the IJ found that Cazares-Zandre had not carried her burden of proving she would "more likely than not be tortured in Honduras by or at the instigation of the

7

government or with the acquiescence of the government." Although there are "numerous problems with law enforcement in Honduras," the acts of violence in the record carried out against members of the LGBT community "do not appear to be in accordance with official authorization, as the Honduran constitution and laws prohibit discrimination based on sexual identity and provides for protection under their penal code." Without diminishing "the brutality and persistence of widespread violence in Honduras" or the fact that Cazares-Zandre faced a greater risk of discrimination, the IJ found Cazares-Zandre had not demonstrated it was "more likely than not that she will personally be at risk of harm which arises to the level of torture."

Cazares-Zandre appealed to the BIA, which in turn dismissed the appeal. The BIA explained that the IJ did not err in finding Cazares-Zandre had been convicted of a particularly serious crime. As a legal matter, said the BIA, the elements brought the crime within the ambit of a particularly serious crime, and as a factual matter, the IJ did not clearly err in determining that Cazares-Zandre's behavior at the Maryland restaurant rendered the crime particularly serious. The BIA further noted that the record demonstrated "widespread social discrimination and harassment against the LGBTI community in Honduras." But the BIA refused to disturb the IJ's conclusion that the "evidence is insufficient to establish that [Cazares-Zandre] individually more likely than not will suffer harm which rises to

8

the level of torture." And it found the IJ did not clearly err in finding Cazares-Zandre had failed to "establish that she more likely than not will suffer torture by or with the acquiescence (including the concept of willful blindness) of a public official of the Honduran government."

Cazares-Zandre moved for reconsideration. The BIA denied that motion. It found Cazares-Zandre had not specified an error of law or fact in its prior decision. Regarding the particularly-serious-crime determination, the BIA rejected Cazares-Zandre's argument that it relied on cases that had been abrogated in part, noting it was not using the abrogated holdings of those cases. It also rejected the notion that the asylum and withholding analyses should be different based on difference in the relevant statutory language. The BIA concluded: "Finally, we discern no factual or legal error in our determination that [Cazares-Zandre] did not establish that she will more likely than not suffer torture by or with the acquiescence of a government official due to her status as a transgender woman."

Cazares-Zandre timely petitioned for review both from the BIA's dismissal of her appeal and from its denial of her motion for reconsideration.

## II. DISCUSSION

"When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the [IJ's] decision." *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016). "When the BIA explicitly agrees with the

findings of the [IJ], we review the decision of both the BIA and [IJ] as to those issues." *Id.* Here, the BIA explicitly agreed with the IJ's findings in all respects. We accordingly review the decisions of both the IJ and the BIA.

## A. Asylum and Withholding of Removal Claims

Cazares-Zandre first challenges the particularly-serious-crime determination that barred her asylum and withholding of removal claims.

"We review our subject matter jurisdiction de novo." *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006). "We lack jurisdiction to consider a claim raised in a petition for review unless the petitioner has exhausted [her] administrative remedies with respect thereto." *Id.*; *see also* 8 U.S.C. § 1252(d)(1). We review the agency's legal determinations de novo. *See Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1254 (11th Cir. 2006).

An alien is ineligible for asylum "if the Attorney General determines that the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." 8 U.S.C. § 1158(b)(2)(A)(ii). The same determination renders an alien ineligible for withholding of removal. *Id.* § 1231(b)(3)(B)(ii).

Yet the asylum and withholding-of-removal statutes define "particularly serious crime" differently. The asylum statute provides that "an alien who has been convicted of an aggravated felony shall be considered to have been convicted

10

of a particularly serious crime." *Id.* § 1158(b)(2)(B)(i).  Moreover, the "Attorney

General may designate by regulation offenses that will be considered to be" a

particularly serious crime.  *Id.* § 1158(b)(2)(B)(ii).  Although the withholding-of-

removal statute also speaks to the Attorney General's broad discretion in

determining whether a crime is "particularly serious," it does so in a different way:

> [A]n alien who has been convicted of an aggravated felony (or
> felonies) for which the alien has been sentenced to an aggregate term
> of imprisonment of at least 5 years shall be considered to have
> committed a particularly serious crime.  The previous sentence shall
> not preclude the Attorney General from determining that,
> notwithstanding the length of sentence imposed, an alien has been
> convicted of a particularly serious crime.

*Id.* § 1231(b)(3)(B).

In *In re N-A-M-*, 24 I. & N. Dec. 336 (2007), the BIA set forth how it

determines whether a crime is particularly serious:

> If the elements of the offense do not potentially bring the crime into a
> category of particularly serious crimes, the individual facts and
> circumstances of the offense are of no consequence, and the alien
> would not be barred from a grant of withholding of removal.  On the
> other hand, once the elements of the offense are examined and found
> to potentially bring the offense within the ambit of a particularly
> serious crime, all reliable information may be considered in making a
> particularly serious crime determination, including the conviction
> records and sentencing information, as well as other information
> outside the confines of a record of conviction.

*Id.* at 342.  Embedded within the *In re N-A-M-* framework are at least two

discretionary determinations: whether a crime's elements render it *potentially*

particularly serious, and whether all the reliable information about the

11

circumstances of the crime leads the agency to conclude it is *actually* particularly serious. We have approved of *In re N-A-M-* in general terms. *See Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010) (noting that under *In re N-A-M-*, the Attorney General "retains discretion to determine on a case-by-case basis whether the offense constituted a particularly serious crime"); *see also id.* ("That discretion may be delegated to other administrative bodies, including IJ's.").

The Attorney General's discretionary determinations are broadly shielded from judicial review. 8 U.S.C. § 1252(a)(2)(B)(ii). But Cazares-Zandre contends that the withholding-of-removal statute limits the Attorney General's discretion. She argues that the statute's "previous sentence" language, *see id.* § 1231(b)(3)(B), subordinates the second sentence to the first. Thus, she says, in the withholding-of-removal context, the Attorney General may find only "aggravated felonies" are "particularly serious crimes." Cazares-Zandre urges us to adopt the Third Circuit's interpretation of the statute. *See Alaka v. Att'y Gen. of the U.S.*, 456 F.3d 88, 104–05 (3d Cir. 2006) ("The second sentence, authorizing the Attorney General to determine when a conviction is 'particularly serious,' is clearly tied to the first; it explicitly refers back to the 'previous sentence,' and accordingly implies that it is limited to aggravated felonies."). But the BIA in *In re N-A-M-* expressly disagreed with the Third Circuit. *See* 24 I. & N. at 341 ("[W]e respectfully disagree with the Third Circuit's interpretation that section 241(b)(3)(B)(ii) . . . defines the term

12

'particularly serious crime' as a subset of aggravated felony offenses."). Cazares-Zandre did not raise her textual argument before the BIA (or ask it to overrule *In re N-A-M-*), and we therefore cannot address it.[7]  *See Amaya-Artunduaga*, 463 F.3d at 1250.

Cazares-Zandre's argument, then, is simply that her crime of conviction—concealment of a dangerous weapon—is not particularly serious.  The agency disagreed, and as the delegate of the Attorney General, its discretionary determination is shielded from judicial review.  *See* 8 U.S.C. § 1252(a)(2)(B)(ii); 8 C.F.R. § 1003.1(a)(1).  We lack jurisdiction over this portion of Cazares-Zandre's petition.

Of course, we retain jurisdiction to review legal questions.  *See* 8 U.S.C. § 1252(a)(2)(D) ("Nothing in . . . any . . . provision of this chapter (other than this section) which limits or eliminates judicial review[] shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals.").  Cazares-Zandre

---

[7] We also note that in *Cole v. United States Attorney General*, 712 F.3d 517 (11th Cir. 2013), we remarked:

> Simply stated, [§ 1231(b)(3)(B)] gives the Attorney General discretion to deny withholding of removal to otherwise qualified aliens if they have committed what the Attorney General deems to be a particularly serious crime.  When, however, an alien has committed an aggravated felony or felonies, and the aggregate term of imprisonment is five years or more, the Attorney General has no discretion, and the statute automatically bars the alien from withholding of removal.

*Id.* at 530.  *Cole* likely conflicts with *Alaka*.  Other than for those crimes that the statute deems particularly serious *per se*, *Cole* in no way purports to limit what the Attorney General may deem to be a particularly serious crime.

13

argues that the IJ and BIA failed to examine the elements of the statute, as *In re N-A-M-* requires.  This argument raises a legal question: whether the agency followed its own rules as laid out in *In re N-A-M-*.  The answer is yes.  The IJ expressly found that "the crime by its nature is serious."  The BIA agreed: "[T]he elements of respondent's offense of conviction potentially bring it within the ambit of a particularly serious crime."  Cazares-Zandre complains that the agency did not say *more* about the elements of the crime, but that complaint is beyond the scope of our very limited inquiry.[8]  In addition, under *In re N-A-M-*, the IJ was entitled to examine the circumstances surrounding the offense.  *See* 24 I. & N. Dec. at 342; *Lapaix*, 605 F.3d at 1143–44.  Perhaps unsurprisingly, given the number of people Cazares-Zandre injured and endangered at the Maryland restaurant, the IJ and BIA concluded the crime was particularly serious.  To the extent Cazares-Zandre presents us with a legal question, we deny her petition.

---

[8] Cazares-Zandre offers several arguments that she did not present to the BIA until her motion for reconsideration, including that the agency is required to employ a categorical approach in determining whether a crime is particularly serious and that the IJ (and then the BIA) relied on abrogated or inapplicable cases in its determination.  Cazares-Zandre's arguments are peculiar and come close to saying that concealing a dangerous weapon is not ever particularly serious.  In any event, we lack jurisdiction to consider these unexhausted arguments.  *See Amaya-Artunduaga*, 463 F.3d at 1250.  Moreover, Cazares-Zandre asserts that the agency's purported failure to comply with its regulations denied her due process.  Such assertions of procedural due process violations require exhaustion before the BIA, *see id.* at 1251, and Cazares-Zandre did not meet that requirement here.

### B.  Convention Against Torture Claim

Cazares-Zandre next challenges the determination that she was ineligible for CAT relief.

We review the agency's factual determinations under the substantial-evidence test.  *See Ruiz*, 440 F.3d at 1254–55.  The substantial-evidence test requires us to "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision."  *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).  We must affirm the BIA's decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 818 (11th Cir. 2004) (quoting *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1283–84 (11th Cir. 2001)).  "To reverse the . . . fact findings, we must find that the record not only supports reversal, but compels it."  *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003).

Under the CAT, the alien carries the burden of proof to show that she will "more likely than not" be tortured in the country to which she will be removed.  8 C.F.R. § 208.16(c)(2).  The alien must show both (1) that she *herself* is more likely than not to endure "severe pain or suffering," and (2) "that it is more likely than not that 'a public official or other person acting in an official capacity' will inflict, instigate, or acquiesce in [the] severe pain or suffering."  *Perez-Guerrero v. U.S.*

15

*Att'y Gen.*, 717 F.3d 1224, 1232 (11th Cir. 2013) (quoting 8 C.F.R.

§§ 208.16(c)(2), 208.18(a)(1)).[9]

Here, the record does not compel a finding that Cazares-Zandre was more

likely than not to be tortured by or with the acquiescence of a government official

if she were deported to Honduras.[10]  It is true, as both the IJ and BIA noted, that

the record shows that members of the LGBT community in Honduras, including

Cazares-Zandre, have been subjected to horrible violence at the hands of civilians

and government officials alike.  But the record also shows that the government of

Honduras has taken recent action to protect LGBT individuals, including

(1) enacting a law that made it a hate crime to discriminate against LGBT

individuals; (2) prosecuting the perpetrators accused of killing LGBT individuals;

(3) training its national police force to protect members of the LGBT community;

and (4) increasing the number of officers on its task force devoted to investigating

these crimes.  Moreover, given our standard of review, Cazares-Zandre offers no

---

[9] Cazares-Zandre invites us to depart from the "more likely than not" standard in favor of the Seventh Circuit's "substantial risk" standard.  *See Gutierrez v. Lynch*, 834 F.3d 800, 806 (7th Cir. 2016).  Because we are bound by prior panel precedent, and because Cazares-Zandre did not extend this invitation to the BIA, we decline to join the Seventh Circuit.

[10] Cazares-Zandre contends that we should apply de novo, not substantial-evidence, review because she "is not asking the court to *reweigh* the evidence presented; she is asking this Court to determine whether all the evidence was fully *considered*, as required by law."  The IJ already told us whether she considered all the evidence when she listed all the exhibits and stated, "All testimony and documentary evidence have been considered in their entirety regardless of whether specifically mentioned in this decision."  Our review of the rest of the IJ's thorough order convinces us that she did indeed consider all the evidence.

16

reason to disturb the agency's finding that she failed to prove a personalized, likely risk of future torturous conduct by Honduran officials.[11]

In short, the record does not *compel* reversal, *see Mendoza*, 327 F.3d at 1287, of the agency's finding that Cazares-Zandre failed to carry her burden of proof.  We deny Cazares-Zandre's petition in this respect.

### C.  Motion to Reconsider

Finally, Cazares-Zandre argues that the BIA erred in denying her motion to reconsider.

"We review the BIA's denial of a motion to reconsider for abuse of discretion."  *Calle v. U.S. Att'y Gen.*, 504 F.3d 1324, 1328 (11th Cir. 2007) (quoting *Assa'ad v. U.S. Att'y Gen.*, 332 F.3d 1321, 1341 (11th Cir. 2003)).  "We review claims of legal error, . . . including claims that the BIA did not provide

---

[11] Cazares-Zandre takes issue with the IJ's "rogue actor" discussion, where the IJ stated, "If in the alternative the officers in the security force and police units are properly characterized as 'rogue actors' in carrying out acts of torture, it is relevant to consider whether they would be breaching their legal responsibility to intervene—i.e., acquiescing—when they fail to arrest themselves, their co-workers, or others [torturing] the applicant."  IJ Dec. at 16 (quoting *Ramirez-Peyro v. Holder*, 574 F.3d 893, 905 (8th Cir. 2009)) (quotation marks omitted). Cazares-Zandre asserts that there is no rogue actor "exception" to CAT protection.  But the IJ did not carve out any such exception.  The IJ's use of the term rogue actors stemmed from her conclusion that the Honduran government now officially condemns violence against members of the LGBT community.  The IJ's point in using the term was to note that the Honduran police would have a duty to arrest themselves or their colleagues who engaged in torture.  But that fact did not matter, the IJ reasoned, because "the record fails to adequately establish that [Cazares-Zandre] herself faces a foreseeable, real and personal danger of being subjected to torture by members of the National Police in breach of their duty to intervene to prevent torture."  For the reasons stated above, we find no reversible error in that conclusion.

17

reasoned consideration of its decision, *de novo*." *Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 872 (11th Cir. 2018).

The BIA must indeed give "reasoned consideration" to questions presented. *See id.* at 874. We have described the standard for "reasoned consideration" as follows:

> A reasoned-consideration examination does not look to whether the agency's decision is supported by substantial evidence. Rather, it looks to see whether the agency has considered the issues raised and announced its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted. Yet, while the agency is required to consider all evidence that a petitioner has submitted, it need not address specifically each claim the petitioner made or each piece of evidence the petitioner presented. Ultimately, the agency does not give reasoned consideration to a claim when it misstates the contents of the record, fails to adequately explain its rejection of logical conclusions, or provides justifications for its decision which are unreasonable and which do not respond to any arguments in the record.

*Id.* (quoting *Jeune*, 810 F.3d at 803).

The BIA did not abuse its discretion or otherwise fail to provide reasoned consideration in denying Cazares-Zandre's motion to reconsider. Cazares-Zandre takes issue with the length of the BIA's order denying her motion, arguing the order reveals it did not "engage in individualized analysis" of the facts of her case or her arguments. In fact, Cazares-Zandre says the BIA's order was so terse that it denied her due process. We disagree. "What is central to a showing of reasoned consideration is that the reasoning of the [IJ] and the BIA is logical and can be

18

reviewed for error." *Bing Quan Lin*, 881 F.3d at 874. The agency does not need to address every claim or piece of evidence. *See id.* We find the BIA's reasoning logical and reviewable. Part of the BIA's reconsideration order had new reasoning—reasoning with which Cazares-Zandre takes issue. Of course, the fact that Cazares-Zandre argues against that new reasoning is a tacit concession that we can review it for error. Elsewhere in its order, the BIA said it found no error in its previous decision. In doing so, the BIA simply reaffirmed that decision, which is a decision we can and have reviewed.[12]

Cazares-Zandre again urges us to conclude that Attorney General must use a categorical approach in deciding whether a crime is particularly serious for purposes of deciding an alien's eligibility for asylum or withholding of removal. Neither the Supreme Court nor this Court (nor, as far as we can tell, any other court) has agreed with that argument, which contradicts the clear, broad discretion afforded to the Attorney General by statute. Rather, we have approved of the *In re N-A-M-* test. *See Lapaix*, 605 F.3d at 1143–44. As discussed, that test, reflecting the agency's statutory discretion, allows the agency to look to the elements of the crime and determine whether it is potentially particularly serious; if it so determines, the agency can then look to reliable information about circumstances surrounding the offense. *In re N-A-M-*, 24 I. & N. Dec. at 342. Here, the agency

---

[12] Although Cazares-Zandre again argues the agency did not properly consider her CAT evidence, she offers no new reasoning. We adhere to our holding above.

complied with *In re N-A-M-*: it found concealing a dangerous weapon was potentially particularly serious, and then it looked to the sordid circumstances of the Maryland offense.  We find no abuse of discretion.[13]

Finally, Cazares-Zandre argues that the agency erred in relying on two cases abrogated by the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015).  The BIA says that to the extent it relied on those cases, it did so for particular portions of their reasoning, not their invalidated holdings.  For example, in one of those cases, *United States v. Hall*, 77 F.3d 398 (11th Cir. 1996), we said, "Carrying a concealed weapon is conduct that poses serious potential risk of physical injury and, so, falls under the definition of violent felony" in 18 U.S.C. § 924(e)(2)(B).  *Id.* at 401.  *Johnson* invalidated the "violent felony" legal conclusion for purposes of the Armed Career Criminal Act, but it did not invalidate the common-sense remark that carrying a concealed weapon poses a risk of physical injury.  Thus, it is no surprise that the IJ put it this way: "In another context, the Eleventh Circuit held that 'carrying a concealed weapon is conduct that poses a serious potential risk of physical injury to another.'"  Cazares-Zandre's conduct at the Maryland restaurant proves this point.

---

[13] Because we reject Cazares-Zandre's argument regarding the categorical approach, we also reject her argument that it was error for the BIA to rely on a case where the elements of the crime did not precisely match the elements of her crime of conviction.

20

### III.  CONCLUSION

Cazares-Zandre has failed to show that the BIA reversibly erred either in affirming the IJ's denial of her applications for relief or in denying her motion to reconsider.

**DISMISSED IN PART; DENIED IN PART.**