# Matter of E-A-S-O-, Respondent

*Decided January 30, 2026*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The *Matter of N-A-M-*, 24 I&N Dec. 336 (BIA 2007), framework is the proper rubric for determining whether a crime is particularly serious and there is no presumption that a single misdemeanor conviction is not for a particularly serious crime. *Matter of Juarez*, 19 I&N Dec. 664 (BIA 1988), overruled.

FOR THE RESPONDENT: Bradley Jenkins, Esquire, Washington, D.C.

FOR THE DEPARTMENT OF HOMELAND SECURITY: Kevin L. Leahy, Assistant Chief Counsel

BEFORE: Board Panel: HUNSUCKER and GOODWIN, Appellate Immigration Judges. Concurring Opinion: MULLANE, Appellate Immigration Judge.

GOODWIN, Appellate Immigration Judge:

In a decision dated October 9, 2024, the Immigration Judge denied the respondent's applications for adjustment of status under section 245 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1255 (2024), asylum and withholding of removal under sections 208(b)(1)(A) and 241(b)(3)(A) of the INA, 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A) (2024), and protection under the regulations implementing the Convention Against Torture ("CAT").[1] The respondent appealed that decision, and the Department of Homeland Security opposes the appeal. On July 23, 2025, we issued a request for supplemental briefing on the continued viability of *Matter of Juarez*, 19 I&N Dec. 664 (BIA 1988). Both parties submitted supplemental briefs.[2] We will dismiss the appeal.

The respondent, a native and citizen of Honduras, applied for adjustment of status based upon his approved special immigrant juvenile visa. He also applied for fear-based relief, asserting that he suffered past harm and feared

---

[1] The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994). 8 C.F.R. §§ 1208.16(c), 1208.17 (2025); 8 C.F.R. § 1208.18(a) (2020).

[2] We acknowledge with appreciation the supplemental briefs submitted by the parties.

future harm on account of his membership in multiple particular social groups and his political opinion. During his merits hearing, he testified that he endured abuse from his father for several years as a child and that he also received threats from the MS-13 gang, who he believes killed his brother-in-law. The respondent further testified that he fears harm from Honduran police because of his tattoos. He also testified that in 2022, he was convicted in the United States for three counts of sexual abuse of a minor pursuant to section 22-3010.01 of the District of Columbia Code.[3]

The Immigration Judge denied the respondent's application for adjustment of status, finding that he did not merit relief in the exercise of discretion. He also found that the respondent's conviction for misdemeanor sexual abuse of a minor constitutes a particularly serious crime barring him from asylum and withholding of removal. The Immigration Judge alternatively found that the respondent did not demonstrate harm rising to the level of persecution, a nexus between his asserted harm and a protected ground, or an objectively reasonable fear of future harm. Finally, the Immigration Judge denied CAT protection, finding that the respondent did not establish that it is more likely than not that he would be tortured by or with the consent or acquiescence of the Honduran Government.

## I. ADJUSTMENT OF STATUS

Adjustment of status is a discretionary form of relief from removal. INA § 245(a), 8 U.S.C. § 1255(a). The respondent bears the burden of establishing that he merits an exercise of discretion. INA § 240(c)(4)(A)(ii), 8 U.S.C. §1229a(c)(4)(A)(ii) (2024). We review discretionary decisions de novo. 8 C.F.R. § 1003.1(d)(3)(ii) (2025).

In denying the respondent's application for adjustment of status as a matter of discretion, the Immigration Judge did not clearly err in finding that the respondent's testimony regarding his criminal history was not credible. *See Garland v. Ming Dai*, 593 U.S. 357, 366 (2021) (explaining that an Immigration Judge is permitted to make a complete or partial adverse credibility determination); *see also Cooper v. Harris*, 581 U.S. 285, 309 (2017) (holding that under clear error review, an appellate court may reverse only when "left with the definite and firm conviction that a mistake has been committed" (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985))). The Immigration Judge permissibly found that the respondent was evasive and minimized his culpability regarding the factual

---

[3] Consistent with the Immigration Judge's decision, we will refer to the respondent's conviction for three counts of sexual abuse of a minor in the singular.

circumstances underlying his conviction for sexual abuse of a child. Even if the Immigration Judge erred in finding the respondent knew his victim's age, the respondent otherwise acknowledges on appeal that his testimony conflicted with the arrest warrant. Given the varying accounts and ambiguity in the record, the Immigration Judge's partial adverse credibility finding specific to the respondent's account of his criminal history is not clearly erroneous. *See* 8 C.F.R. § 1003.1(d)(3)(i).

The respondent's recent criminal conviction and attempts to minimize his culpability before the Immigration Judge weigh heavily against a favorable exercise of discretion. *See Matter of Hashmi*, 24 I&N Dec. 785, 793 (BIA 2009) (discussing discretionary factors for adjustment of status). Based on the reliable, independent evidence pertaining to the respondent's conviction, the Immigration Judge did not clearly err in finding that the respondent pressured a 15-year-old victim to engage in sexual activity, provided her with marijuana, and caused the victim to contract a sexually transmitted infection. *See* 8 C.F.R. § 1003.1(d)(3)(i). The respondent's inability to provide a credible account as to the underlying circumstances of his offense also necessarily undermines his expressed remorse and stated desire for rehabilitation.

The Immigration Judge also considered the positive factors in the respondent's case but concluded that they did not overcome the respondent's significant criminal history and lack of remorse or rehabilitation. *See Matter of Arai*, 13 I&N Dec. 494, 496 (BIA 1970) ("Where adverse factors are present in a given application [for adjustment of status], it may be necessary for the applicant to offset these by a showing of unusual or even outstanding equities."). The Immigration Judge properly identified and considered the respondent's long-term residence in the United States starting at a young age and his family ties, including his United States citizen son, as significant equities. *See id.*

The respondent asserts on appeal that the Immigration Judge did not consider all relevant hardship factors, including the childhood abuse he experienced at the hands of his father, which forms the basis of his eligibility for adjustment of status, and the adverse country conditions in Honduras. Evidence of hardship to the respondent if removal occurs is a relevant favorable factor in a discretionary analysis. *Id*. Notably, the Immigration Judge found without clear error that, by the respondent's own account, he has not had contact with his father since departing Honduras and there is little evidence to suggest that this would change in the future. The Immigration Judge also found without clear error that although the respondent was harmed by gang members when he was a child, this, along with the country

conditions evidence provided, did not persuasively show that he will be targeted for future harm as an adult. Thus, the respondent has not demonstrated that he would suffer significant hardship upon return to Honduras.

The respondent further argues that the Immigration Judge erred in finding that he did not have steady work history. Even if the Immigration Judge did clearly err in this regard, this factor is insufficient to alter the discretion calculus given the strong negative factors in this case. Thus, upon de novo review and considering all relevant factors, we affirm the Immigration Judge's denial of adjustment of status in the exercise of discretion.

## II. ASYLUM AND WITHHOLDING OF REMOVAL

Turning to the respondent's applications for asylum and withholding of removal under the INA and the CAT, the Immigration Judge found that the respondent has been convicted of a particularly serious crime, thereby barring his eligibility. *See* INA §§ 208(b)(2)(A)(ii), 241(b)(3)(B)(ii), 8 U.S.C. §§ 1158(b)(2)(A)(ii), 1231(b)(2)(B)(ii); 8 C.F.R. § 1208.16(d)(2)(i) (2025). The respondent was convicted of misdemeanor sexual abuse of a minor or child pursuant to section 22-3010.01 of the District of Columbia Code. At all relevant times, the statute of conviction stated: "Whoever, being 18 years of age or older and more than 4 years older than a child, or being 18 years of age or older and being in a significant relationship with a minor, engages in sexually suggestive conduct with that child or minor shall be imprisoned for not more than 180 days . . . ." D.C. Code Ann. § 22-3010.01(a) (West 2022). The term "child" is defined as "a person who has not yet attained the age of 16 years," and a "minor" is "a person who has not yet attained the age of 18 years." D.C. Code Ann. § 22-3001(3), (5A) (West 2022).

A conviction may qualify as a particularly serious crime based on "the nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of the conviction." *Matter of N-A-M-*, 24 I&N Dec. 336, 342 (BIA 2007), *aff'd*, 587 F.3d 1052 (10th Cir. 2009); *see also Gao v. Holder*, 595 F.3d 549, 554–55 (4th Cir. 2010) (deferring to *Matter of N-A-M-*). The Immigration Judge first examines whether "the elements of the offense . . . potentially bring the crime into a category of particularly serious crimes." *Matter of N-A-M-*, 24 I&N Dec. at 342. "[O]nce the elements of the offense are examined and found to potentially bring the offense within the ambit of a particularly serious crime, all reliable information may be considered in making a particularly serious crime determination, including the conviction records and sentencing information,

as well as other information outside the confines of a record of conviction." *Id*. Where evidence indicates that the particularly serious crime bar may apply, the respondent bears the burden to establish that he has not been convicted of a particularly serious crime. *See* 8 C.F.R. § 1240.8(d) (2025).

The Immigration Judge concluded that the nature of the respondent's offense brought it within the ambit of a particularly serious crime. After analyzing the facts of the respondent's offense, the Immigration Judge determined that the respondent had not satisfied his burden of demonstrating that his conviction is not for a particularly serious crime. On appeal, the respondent argues that the Immigration Judge erred in finding his offense is a particularly serious crime without addressing *Matter of Juarez*. We review de novo whether a conviction is for a particularly serious crime. *See Matter of R-A-M-*, 25 I&N Dec. 657, 658 (BIA 2012); 8 C.F.R. § 1003.1(d)(3)(ii).

In *Matter of Juarez*, the Board held that "[e]xcept possibly under unusual circumstances not present here, we would not find a single conviction for a misdemeanor offense to be a 'particularly serious crime.'" 19 I&N Dec. at 665. The respondent argues that *Matter of Juarez* creates a presumption that misdemeanor offenses are not particularly serious crimes absent unusual circumstances. But *Matter of Juarez* does not explicitly create such a presumption. To the extent a presumption can be implied, we conclude that such a presumption is inconsistent with current case law and the objective of the particularly serious crime bar.

*Matter of Juarez* contains little analysis supporting its conclusion and does not clearly address what "unusual circumstances" are or what misdemeanor convictions would be excepted from the general statement that misdemeanors do not normally constitute particularly serious crimes. *Id*. Moreover, although *Matter of Juarez* does not state which party carries the burden to establish that unusual circumstances exist, because the alien would not generally argue that his or her misdemeanor offense is a particularly serious crime, the decision appears to impermissibly shift the burden of proof to DHS to prove unusual circumstances. *See* 8 C.F.R. § 1240.8(d).

The alleged presumption that a single misdemeanor conviction does not generally constitute a particularly serious crime does not take into consideration changes in what offenses States classify as misdemeanors. Since *Matter of Juarez* was issued in 1988, several states have classified dangerous crimes as misdemeanors and have also adopted the use of "wobbler" provisions that allow for the reclassification of certain dangerous offenses as either felonies or misdemeanors by prosecutors or State courts.

*See, e.g.*, N.Y. Penal Law §§ 130.20, 130.52, 130.55, 130.60 (McKinney 2025) (classifying sexual misconduct, forcible touching, and sexual abuse in the second and third degrees as misdemeanors); Cal. Penal Code § 261.5(d) (West 2025) (classifying unlawful sexual intercourse between a person 21 years of age or older with a minor who is under 16 years of age as either a misdemeanor or a felony); Colo. Rev. Stat. Ann. § 18-6.5-103(6)(a), (9)(c)(ii) (West 2025) (explaining certain crimes against elderly and disabled adults, such as false imprisonment and knowingly acting in a manner likely to be injurious, are punishable as misdemeanors); Ariz. Rev. Stat. Ann. § 13-604(A) (2025) (permitting certain crimes in Arizona to be recategorized and punished as Class 1 misdemeanors rather than Class 6 felonies); Ariz. Rev. Stat. Ann. § 13-1203 (2025) (classifying assault crimes as misdemeanors); Va. Code Ann. § 18.2-67.4.2 (West 2025) (classifying sexual abuse of a child between the ages of 13 and 15 years as a misdemeanor).  A presumption that some of these dangerous crimes are not particularly serious runs counter to the particularly serious crime bar's objective of protecting the public.  *See Matter of N-A-M-*, 24 I&N Dec. at 341.

The alleged presumption in *Matter of Juarez* is also inconsistent with the Board's decision in *Matter of N-A-M-*.[4]  As discussed above, the particularly serious crime framework set forth in *Matter of N-A-M-* requires that we look at the nature of the conviction, the sentence imposed, and the circumstances and underlying facts of the conviction.  24 I&N Dec. at 342.  Under *Matter of N-A-M-*, the sentence imposed is just one consideration, and thus whether the State designates a crime as a misdemeanor or a felony is one element of the analysis only, not the entirety of the analysis.  *Id*. at 343 (noting that "the sentence imposed is not a dominant factor in determining whether a conviction is for a particularly serious crime").  The *Matter of N-A-M-* framework is the proper rubric for determining whether a crime is particularly serious and there is no presumption that a single misdemeanor conviction is not for a particularly serious crime.  Because *Matter of Juarez* provides no meaningful guidance regarding how, under current law, to analyze misdemeanor convictions for the purpose of determining whether the particularly serious crime bar applies, it does not provide a useful rubric.  Thus, we now overrule *Matter of Juarez*.

---

[4]　Notably, in *Matter of N-A-M-*, we found that a conviction for violating a statute similar to that found not to be for a particularly serious crime in *Matter of Juarez* was for a particularly serious crime.  *Compare Matter of N-A-M-*, 24 I&N Dec. at 343 (finding felony menacing with a deadly weapon to be a particularly serious crime), *with Matter of Juarez*, 19 I&N Dec. at 664–65 (finding misdemeanor assault with a deadly weapon was not a particularly serious crime).

We affirm the Immigration Judge's determination that the respondent's conviction constitutes a particularly serious crime under the current analytical scheme. The respondent was convicted of three counts of sexual abuse of a minor. Although his offense was labeled a misdemeanor, child sex crimes are particularly egregious. The respondent's statute of conviction includes sexually suggestive conduct perpetrated upon a child under the age of 16. D.C. Code Ann. §§ 22-3001(3), 22-3010.01(a). Such conduct is highly abusive. *Cf. Esquivel-Quintana v. Sessions*, 581 U.S. 385, 390–91 (2017) (concluding that the generic definition of sexual abuse of a minor requires that the victim be younger than 16). We are thus persuaded that the elements of misdemeanor sexual abuse of a minor or child fall within the ambit of a particularly serious crime, placing the burden on the respondent to establish that his conviction is not for a particularly serious crime. As discussed above, the Immigration Judge found that the respondent pressured a 15-year-old victim to engage in sexual activity, provided her with marijuana, and caused the victim to contract a sexually transmitted infection. Thus, despite the respondent's conviction being for a misdemeanor, we agree with the Immigration Judge that based on the facts and circumstances underlying the respondent's conviction, the respondent has failed to establish that his offense is not particularly serious. *Matter of N-A-M-*, 24 I&N Dec. at 342-43; 8 C.F.R. § 1240.8(d). Based on the foregoing, we affirm the Immigration Judge's conclusion that the respondent is barred from asylum and withholding of removal. *See* INA §§ 208(b)(2)(A)(ii), 241(b)(3)(B)(ii), 8 U.S.C. §§ 1158(b)(2)(A)(ii), 1231(b)(2)(B)(ii); 8 C.F.R. § 1208.16(d)(2)(i).

## III. CONVENTION AGAINST TORTURE

Turning to the respondent's request for deferral of removal under the CAT, the Immigration Judge's denial is also affirmed. *See* 8 C.F.R. § 1208.17(a) (2025). The respondent does not contest the Immigration Judge's determination that he does not face a sufficient, individualized risk of torture from the gang members who attempted to recruit and extort him in the past or from his father. As such, the respondent has waived any challenges to these findings. *See Matter of P-B-B-*, 28 I&N Dec. 43, 44 n.1 (BIA 2020).

As to his remaining theory of torture, the respondent claimed that he will be detained upon arrival in Honduras due to his tattoos, criminal history, and deportee status and tortured while in detention. The respondent first argues that the Immigration Judge applied a legally erroneous standard by requiring him to show that every Honduran male with tattoos would be subjected to detention. *See Ibarra Chevez v. Garland*, 31 F.4th 279, 290 (4th Cir. 2022)

(explaining that the "more likely than not" analysis does not "require any specific statistical or quantitative analysis"). We are not persuaded that remand is warranted, however, on this basis. Even assuming, without deciding, that the respondent would be detained upon his arrival based on his criminal history and tattoos, we agree with the Immigration Judge that the record does not support his claim that he will more likely than not be tortured.

On appeal, the respondent cites to country conditions evidence documenting instances of abuse in custody, some of which may constitute torture. However, absent information regarding the frequency or pervasiveness of the use of torture, the Immigration Judge did not clearly err in finding that the country conditions evidence coupled with the factual circumstances of the respondent's claim did not sufficiently establish that it is more likely than not that he personally would suffer harm constituting torture upon return to Honduras. *See Matter of A-A-R-*, 29 I&N Dec. 38, 42 (BIA 2025) (emphasizing that an alien "must do more than show that some individuals in detention suffer harm rising to the level of torture" to prevail on a CAT claim); *see also Matter of A-A-F-V-*, 29 I&N Dec. 118, 119 (BIA 2025) (holding that the question of what will happen to an alien is a factual finding, whereas whether such harm amounts to torture is a legal determination). Thus, although the respondent argues that his tattoos, criminal history, and deportee status would lead to his arrest, the record does not reflect that he will more likely than not be tortured if detained. As such, the respondent has not carried his burden to establish his eligibility for protection under the CAT. We will therefore dismiss the respondent's appeal.

**ORDER:** The respondent's appeal is dismissed.

**NOTICE:** If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by DHS, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation. *See* INA § 274D, 8 U.S.C. § 1324d (2024); 8 C.F.R. § 280.53(b)(14) (2025). Further, any respondent that has been denied admission to, removed from, or has departed the United States while an order of exclusion, deportation, or removal is outstanding and thereafter enters, attempts to enter, or is at any time found in the United States shall be fined or imprisoned not more than 2 years, or both. *See* INA § 276(a), 8 U.S.C. § 1326(a) (2024).

*CONCURRING OPINION:* Hugh G. Mullane, Appellate Immigration Judge

I agree with the result reached by the majority in this case. I would not, however, overturn *Matter of Juarez*, 19 I&N Dec. 664 (BIA 1988). The majority's efforts here are a solution in search of a problem.

*Matter of Juarez*, 19 I&N Dec. at 665, merely says a "single conviction" for a misdemeanor will not—except in unusual circumstances—constitute a particularly serious crime that renders an applicant not eligible for asylum or withholding of removal. To overturn a precedent, we should reference the important reason for doing so. For example, the precedent is producing unintended results or Immigration Judges are struggling to sensibly apply it. But the majority does not invoke those reasons as they are clearly inapplicable. The Immigration Judge, in this case, had no trouble concluding that respondent's offense was a particularly serious crime. The majority likewise does not suggest that if the Immigration Judge had applied *Matter of Juarez*, he would have been bound to hold the particularly serious crime bar inapplicable. Moreover, there is no other evidence of Immigration Judges misapplying *Matter of Juarez* and affording asylum or withholding of removal to applicants convicted of a particularly serious crime merely because the crime is labeled as a misdemeanor.

The best reason the majority can come up with for overturning *Matter of Juarez* is that the "unusual circumstance" caveat is not a "useful rubric." But some guidance—even general guidance—is often better than none at all (particularly when the legal issue is narrow). In any event, the primary guidance for resolving the particularly serious crime question is a decision that post-dates *Matter of Juarez*—namely, *Matter of N-A-M-*, 24 I&N Dec. 336 (BIA 2007), *aff'd*, 587 F.3d 1052 (10th Cir. 2009). Notably, we left *Matter of Juarez* intact there, when we concluded that a particularly serious crime "need not be an aggravated felony." *Matter of N-A-M-*, 24 I&N Dec. at 337. Without stronger reasons, I see no need to set aside *Matter of Juarez* as I suspect that most misdemeanor offenses would not constitute a particularly serious crime.