# Matter of R-B-E-, Respondent

*Decided March 6, 2026*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  If a respondent demonstrates past persecution, there is a presumption of a future threat to life or freedom on the basis of the original claim, but this presumption may be rebutted if there has been a fundamental change in circumstance such that the respondent's life or freedom would not be threatened on account of a protected ground.

(2)  Where a presumption of a future threat to life or freedom applies, an Immigration Judge cannot rely on generalized crime and widespread violence unrelated to the original claim to find the presumption has not been rebutted, particularly where other evidence suggests a fundamental change in circumstances such that a respondent will no longer be harmed on account of a protected ground.

(3)  The respondent's conviction for Conspiracy to Commit Access Device Fraud in violation of 18 U.S.C. § 1029(b)(2) (2018) constitutes a particularly serious crime rendering her statutorily ineligible for withholding of removal.

FOR THE RESPONDENT:  Tiffany Chambers, Esquire, Homestead, Florida

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Michael J. Gross, Assistant Chief Counsel

BEFORE:  Board Panel:  GOODWIN, GEMOETS, and VOLKERT, Appellate Immigration Judges.

VOLKERT, Appellate Immigration Judge:

The Department of Homeland Security ("DHS") appeals the Immigration Judge's May 30, 2025, decision granting the respondent's application for withholding of removal under section 241(b)(3)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3)(A) (2024).  DHS argues, inter alia, that the presumption the respondent's life or freedom will be threatened in the future has been rebutted by a fundamental change in circumstances and, alternatively, that the respondent is barred from withholding of removal based on a conviction for a particularly serious crime.  The respondent opposes the appeal.[1]  We will sustain the appeal,

---

[1]  The respondent and DHS do not challenge on appeal the Immigration Judge's denial of the respondent's applications for asylum, based on a conviction for an aggravated felony, and adjustment of status under section 209(b) of the INA, 8 U.S.C. § 1159(b) (2024), as a matter of discretion.  We deem any further arguments on these issues waived.  *See Matter of*

vacate the grant of withholding of removal, and remand the record to the Immigration Judge for further proceedings consistent with this order.

## I. FACTS AND PROCEDURAL HISTORY

The respondent, a native and citizen of Haiti, claims to have suffered harm in 1999 and 2000 because her family opposed the Lavalas government led by former President Jean Bertrand Aristide. After entering the United States in 2001, she was granted asylum on October 21, 2004, and never adjusted her status to that of a lawful permanent resident. Subsequently, in 2020, the respondent was convicted of Conspiracy to Commit Access Device Fraud pursuant to 18 U.S.C. § 1029(b)(2). She was placed in removal proceedings. The Immigration Judge determined that she had been convicted of an aggravated felony barring asylum but concluded that the offense did not constitute a particularly serious crime barring withholding of removal. The Immigration Judge further determined that the respondent suffered past persecution in Haiti on account of her political opinion, based on her family's opposition to the Lavalas regime and their association with the prior Duvalier government. The Immigration Judge further relied on evidence of widespread gang violence, political instability, and deteriorating country conditions in Haiti to conclude that the respondent would likely face future harm if returned. Additionally, the Immigration Judge concluded that internal relocation would be unreasonable given the respondent's long absence from Haiti and the pervasive reach of gang activity nationwide. On that basis, the Immigration Judge granted withholding of removal. DHS filed the instant appeal.

## II. ANALYSIS

### A. Withholding of Removal

To qualify for withholding of removal, a respondent must establish that it is more likely than not that her life or freedom would be threatened on account of race, religion, nationality, membership in a particular group, or political opinion. *See* INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(b) (2026). The burden of proof rests on the respondent to demonstrate that she faces a clear probability of persecution. *See* 8 C.F.R. § 1208.16(b); *see also Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 891 (11th Cir. 2007) (discussing withholding of removal's clear probability of persecution standard). If a respondent demonstrates past persecution,

---

*P-B-B-*, 28 I&N Dec. 43, 44 n.1 (BIA 2020) (stating that arguments not raised on appeal are deemed waived); *Matter of N-A-I-*, 27 I&N Dec. 72, 73 n.1 (BIA 2017) (same), *aff'd sub nom., Ali v. Barr*, 951 F.3d 275 (5th Cir. 2020).

there is a presumption of a future threat to life or freedom on the basis of the original claim. 8 C.F.R. § 1208.16(b)(1)(i). This presumption may be rebutted if there has been a "fundamental change in circumstances" such that the respondent's life or freedom would not be threatened on account of a protected ground. 8 C.F.R. § 1208.16(b)(1)(i)(A).

We agree with DHS that even assuming the respondent established past persecution, DHS has rebutted any resulting presumption of a future threat to life or freedom by demonstrating a fundamental change in circumstances.[2] *See id.* The Immigration Judge found that the respondent suffered past persecution on account of her political opinion based on events that occurred more than two decades ago during a period of political conflict involving the Lavalas party, which has long since fallen from power. *See Imelda v. U.S. Att'y Gen.*, 611 F.3d 724, 729–30 (11th Cir. 2010) (recognizing that a change in the government that has persecuted the alien may constitute a fundamental change in circumstances). The respondent last resided in Haiti in 2000, and the record contains no evidence that she remains of interest to any political group due to her family's prior political activity.

In response to DHS' appeal, the respondent asserts that the Immigration Judge properly found the presumption of future persecution unrebutted because continued uncontrolled gang violence in Haiti is demonstrative of the same ideology as that of the former Lavalas regime, now reflected in the Haitian Tet Kale Party, which the respondent opposes. The respondent contends that although the Lavalas party is no longer formally in power, the gangs' political alliance and targeting of perceived opponents demonstrate that her fear remains on account of her political opinion, and that the Haitian Government is unable or unwilling to control them.

The record, however, does not support the respondent's claim that her current fear arises from her political affiliation or that the gang violence in Haiti is politically motivated toward individuals similarly situated to her. The Immigration Judge did not clearly err in finding widespread gang violence in Haiti. *See* 8 C.F.R. § 1003.1(d)(3)(i) (2026). The Immigration Judge's decision, however, does not find that this gang violence is linked to political affiliation. The respondent herself testified that the gangs target individuals indiscriminately and not for political reasons. The respondent further testified that the current gangs are not affiliated with the Lavalas party and that her political opinion is not the reason she fears harm from gangs.

---

[2] Although DHS challenges the Immigration Judge's finding that the respondent's testimony was credible, we need not address this argument because we agree with DHS' alternative arguments regarding withholding of removal.

Although the respondent expressed dissatisfaction with the current government's inability to control the gangs, her testimony does not establish that any harm she fears at the hands of the gangs would be on account of an actual or imputed political opinion.

The Immigration Judge's analysis improperly relied on the respondent's past political harm to bridge the nexus gap to current conditions without evidence of a continued political motive. Where a presumption of a future threat to life or freedom applies, an Immigration Judge cannot rely on generalized crime and widespread violence unrelated to the original claim to find the presumption has not been rebutted, particularly where other evidence suggests a fundamental change in circumstances such that a respondent will no longer be harmed on account of a protected ground. As discussed above, there has been a fundamental change in circumstances in Haiti since the respondent's past persecution. While the record describes a catastrophic security situation in Haiti driven by criminal gangs and institutional collapse, it does not demonstrate politically motivated targeting of individuals similarly situated to the respondent, nor does it link current gang activity to the ideology or objectives of the former Lavalas regime. Overall, the record does not show a concrete connection between the political events that caused the respondent's family harm in 1999 and 2000 and the generalized gang violence currently occurring in Haiti.

The respondent has also not demonstrated a clear probability of future harm independent of her past persecution. "In order to demonstrate a sufficient connection between future persecution and [a] protected activity, an alien is required 'to present specific, detailed facts showing a good reason to fear that he or she will be *singled out* for persecution on account' of such a protected activity." *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005) (citation omitted). Although the Immigration Judge relied heavily on country conditions reports describing widespread violence and political instability in Haiti, those reports do not establish that the respondent would be singled out for harm on account of a protected ground. *See Matter of M-E-V-G-*, 26 I&N Dec. 227, 235 (BIA 2014) (finding asylum and refugee laws do not protect people from general violent or criminal conditions).

The Immigration Judge also clearly erred in finding that the respondent lacks significant connections to Haiti. *See* 8 C.F.R. § 1003.1(d)(3)(i). The record reflects that the respondent's mother continues to reside in Haiti and, despite the ongoing instability, has not been harmed. The continued safety of similarly situated family members further undermines the respondent's claim that she faces a clear probability of future persecution on account of a

protected ground. *See Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1259 (11th Cir. 2006) (noting that evidence that an alien's family remains unharmed in the country of removal undermines his claim of future persecution); *Matter of A-E-M-*, 21 I&N Dec. 1157, 1160 (BIA 1998) (same).

For the foregoing reasons, we conclude that the respondent has not established eligibility for withholding of removal. The record demonstrates a fundamental change in circumstances rebutting the presumption of a future threat to life or freedom. The evidence of generalized crime, violence, and instability in Haiti also does not demonstrate that the respondent faces a clear probability of future persecution on account of a protected ground.

## B. Particularly Serious Crime

In the alternative, we conclude that, contrary to the Immigration Judge's determination, the respondent's conviction for Conspiracy to Commit Access Device Fraud in violation of 18 U.S.C. § 1029(b)(2) constitutes a particularly serious crime rendering her statutorily ineligible for withholding of removal. INA § 241(b)(3)(B)(ii), 8 U.S.C. § 1231(b)(3)(B)(ii). We review de novo whether a conviction is for a particularly serious crime. *See Matter of R-A-M-*, 25 I&N Dec. 657, 658 (BIA 2012).

The respondent's conviction under subsection (b)(2) criminalizes being a party to a conspiracy to commit an offense under subsection (a) of 18 U.S.C. § 1029. The record of conviction establishes that the respondent pled guilty to conspiring to violate 18 U.S.C. § 1029(a)(2) and (3). Subsection (a)(2) criminalizes knowingly and with intent to defraud trafficking in or using one or more unauthorized access devices to obtain $1,000 or more during a 1-year period. 18 U.S.C. § 1029(a)(2). Subsection (a)(3) criminalizes knowingly and with intent to defraud possessing 15 or more counterfeit or unauthorized access devices. 18 U.S.C. § 1029(a)(3).

Although the parties do not dispute that the respondent's conviction is for an aggravated felony, her conviction is not per se particularly serious because she was not sentenced to an aggregate term of imprisonment of at least 5 years. *See* INA § 241(b)(3)(B), 8 U.S.C. § 1231(b)(3)(B). Thus, we apply the framework provided in *Matter of N-A-M-*, 24 I&N Dec. 336, 342 (BIA 2007), *aff'd*, 587 F.3d 1052 (10th Cir. 2009), to determine whether her crime is particularly serious. *See Matter of E-A-S-O-*, 29 I&N Dec. 422, 425–27 (BIA 2026). Here, the nature of the respondent's conviction, which involves conspiring, through fraud, to obtain money through the use of unauthorized access devices, brings it within the ambit of a particularly serious crime. *See Matter of F-R-A-*, 28 I&N Dec. 460, 468 (BIA 2022)

(holding that a conviction which involves attempting or conspiring to obtain money or property through fraud is within the ambit of a particularly serious crime).

The Immigration Judge erred in determining that the facts and circumstances of the respondent's conviction did not indicate that the crime was particularly serious. The Immigration Judge provided only two facts that apparently mitigated the seriousness of the crime. First, he cited the respondent's cooperation with the United States Government in the prosecution of her codefendant. However, "cooperation with law enforcement authorities" is a factor "subsequent and unrelated to the commission of the offense," which "may operate to reduce a sentence but do[es] not diminish the gravity of a crime." *Matter of N-A-M-*, 24 I&N Dec. at 343 (noting that for these reasons, "the sentence imposed is not the most accurate or salient factor to consider in determining the seriousness of an offense").

Second, he noted that the respondent claimed she was not certain of her coconspirator's intentions in obtaining the information. This is flatly inconsistent with the respondent's conspiracy conviction, which required that she conspire to act "knowingly and with intent to defraud." 18 U.S.C. § 1029(a)(2)–(3). "An alien convicted of a crime 'must be considered guilty of the crime.'" *Matter of Garcia-Flores*, 29 I&N Dec. 230, 231 (BIA 2025) (quoting *Matter of Mendez*, 21 I&N Dec. 296, 304 (BIA 1996)). As specific criminal intent is an essential element of the respondent's crime, the Immigration Judge should not have considered the respondent's claim of ignorance or innocence as a factor militating against the seriousness of her crime. *See id.* Ultimately, the Immigration Judge erred by finding the respondent's crime not particularly serious based solely on her cooperation with law enforcement and a self-exculpatory statement.

Properly considered, the nature, facts, and circumstances of the respondent's crime indicate that it was particularly serious. The crime involved the abuse of the respondent's position as an insurance sales agent, through which she obtained a program to steal the personal identifying information of numerous individuals. She then provided that information to a coconspirator who used it to steal money from those individuals. This prolonged and sophisticated scheme involved an intended loss amount of between $3.5 million and $9 million. In her plea agreement, the respondent agreed to a forfeiture money judgment in the amount of $38,500, which was the total amount of proceeds deposited in her financial accounts that were traceable to the fraudulent scheme. She was sentenced to 4 years of probation and held jointly and severally liable for restitution of $50,560.43.

Identity theft by its nature is an especially damaging method of theft. Victims of identity theft may have "numerous unauthorized charges and accounts made in their name," incur "drops in their credit scores," have "their ability to obtain loans affected," and often must spend "time, money, and effort trying to mitigate their injuries, including disputing fraudulent activity, filing police reports, and otherwise dealing with identity theft." *Equifax Inc. Customer Data Sec. Breach Litig. v. Equifax Inc.*, 999 F.3d 1247, 1263–64 (11th Cir. 2021). Considering the damaging nature of identity theft, the fraudulent intent required, the sophisticated nature of the respondent's scheme, the numerous victims, the intended theft of millions of dollars and the traceable theft of $38,500, the ordered restitution of $50,560.43, and the imposed sentence of 4 years of probation, we conclude that the respondent's conviction constitutes a particularly serious crime within the meaning of section 241(b)(3)(B)(ii) of the INA, 8 U.S.C. § 1231(b)(3)(B)(ii). *See, e.g.*, *Sopo v. U.S. Att'y Gen.*, 739 F. App'x 554, 558–59 (11th Cir. 2018) (unpublished) (holding that the Board appropriately determined that a bank fraud scheme resulting in individual liability of $23,534 and a 33-month sentence was a particularly serious crime). Accordingly, even assuming that the Immigration Judge did not err in the withholding of removal analysis, the respondent is independently barred from withholding of removal based on her conviction for a particularly serious crime.

## C. Remaining Matters

The Immigration Judge did not evaluate the respondent's application for protection under the regulations implementing the Convention Against Torture ("CAT"),[3] having deemed that application moot upon the grant of withholding of removal. Because we reverse the grant of withholding of removal, remand is necessary for the Immigration Judge to consider CAT protection.

On appeal, DHS challenges the Immigration Judge's credibility finding, arguing that the respondent's testimony contained material inconsistencies, omissions, and implausibilities that were not adequately addressed by the Immigration Judge. On remand, the Immigration Judge should make explicit findings regarding the respondent's credibility and address the issues identified by DHS on appeal. The Immigration Judge should then apply such

---

[3] The Convention Against Torture and Other Cruel Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994). 8 C.F.R. §§ 1208.16(c), 1208.17 (2026); 8 C.F.R. § 1208.18(a) (2020).

credibility findings to his analysis of the respondent's application for CAT protection.

Accordingly, DHS's appeal will be sustained and the Immigration Judge's grant of withholding of removal will be vacated. The record will be remanded to the Immigration Judge for further proceedings to include: (1) explicit credibility findings, and (2) adjudication of the respondent's application for CAT protection based on the full record.

**ORDER:**  The appeal is sustained.

**FURTHER ORDER:**  The Immigration Judge's May 30, 2025, decision granting withholding of removal is vacated.

**FURTHER ORDER:**  The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing decision and issuance of a new decision.