# Matter of G-L-C-, Respondent

*Decided by Board May 21, 2026[1]*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) The respondent's conviction for possession with intent to deliver a controlled substance in violation of title 35, section 780-113(a)(30) of the Pennsylvania Consolidated Statutes is for a particularly serious crime rendering her statutorily ineligible for asylum and withholding of removal.

(2) The respondent did not establish eligibility for deferral of removal under the Convention Against Torture where past mistreatment in Jamaica based on her sexual orientation was inflicted by private individuals and she did not demonstrate that a public official would likely acquiesce to any torture.

FOR THE RESPONDENT:  Laura L. Shoaps, Esquire, Westminster, Colorado

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Carmen F. Rickard, Assistant Chief Counsel

BEFORE:  Board Panel:  GORMAN, Deputy Chief Appellate Immigration Judge; VOLKERT, Appellate Immigration Judge; MCCLOSKEY, Temporary Appellate Immigration Judge.

MCCLOSKEY, Temporary Appellate Immigration Judge:

The respondent[2] is a native and citizen of Jamaica.  The Department of Homeland Security ("DHS") appeals from an Immigration Judge's October 15, 2020, decision granting the respondent's application for asylum under section 208(b)(1)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158(b)(1)(A) (2018).  The respondent opposes the appeal.  The appeal will be sustained, and the respondent will be ordered removed to Jamaica.

---

[1]  Pursuant to Order No. 6936-2026, dated June 18, 2026, the Acting Attorney General designated the Board's decision in *Matter of G-L-C-* (BIA May 21, 2026), as precedent in all proceedings involving the same issue or issues.  *See* 8 C.F.R. § 1003.1(g)(3) (2026). Editorial changes have been made consistent with the designation of the case as a precedent.

[2]  We use feminine pronouns because the respondent is a transgender woman.

   This matter was last before the Board on February 5, 2020, when we sustained the respondent's appeal from an Immigration Judge's March 27, 2019, denial of her application for asylum, withholding of removal under section 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3) (2018), and protection under the regulations implementing the Convention Against Torture ("CAT").[3]  While we concluded that the respondent's June 2011 conviction for possession with intent to deliver a controlled substance in violation of title 35, section 780-113(a)(30) of the Pennsylvania Consolidated Statutes was not an aggravated felony, and thus was not a per se particularly serious crime for asylum purposes, we remanded the record for the Immigration Judge to determine whether the respondent was convicted of a particularly serious crime barring her from asylum and withholding of removal under *Matter of N-A-M-*, 24 I&N Dec. 336, 342 (BIA 2007), *aff'd*, 587 F.3d 1052 (10th Cir. 2009).  We also instructed the Immigration Judge to determine whether the respondent has shown eligibility for asylum and statutory withholding of removal on the merits.

   Given the evidence of the respondent's conviction, she bears the burden of proving by a preponderance of the evidence that the particularly serious crime bar to asylum and withholding of removal does not apply.  8 C.F.R. § 1240.8(d) (2026).  The parties dispute whether the Immigration Judge correctly determined that the respondent met her burden of proof.  We apply *Matter of N-A-M-* in reviewing this question de novo.  *Matter of E-A-S-O-*, 29 I&N Dec. 422, 426 (BIA 2026).  We will reverse the conclusion that the respondent established that she was not convicted of a particularly serious crime.

   At the outset, we examine the nature of the respondent's conviction, which entails determining whether "the elements of the offense . . . potentially bring the crime into a category of particularly serious crimes." *Matter of N-A-M-*, 24 I&N Dec. at 342.  The statute of conviction prohibits "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act . . . or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance."  35 Pa. Stat. and Cons. Stat. § 780-113(a)(30) (West 2011).  As explained in our prior decision, the statute is not categorically an aggravated felony because the minimum punishable conduct is distribution of a small amount of marijuana for no remuneration.  *See*

---

[3]   The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994).  8 C.F.R. §§ 1208.16(c), 1208.17 (2026); 8 C.F.R. § 1208.18(a) (2020).

*Walker v. Att'y Gen. U.S.*, 625 F. App'x 87, 90–91 (3d Cir. 2015); *Evanson v. Att'y Gen. U.S.*, 550 F.3d 284, 293 (3d Cir. 2008).[4]   Nevertheless, considering the full range of conduct criminalized by title 35, section 780-113(a)(30) of the Pennsylvania Consolidated Statutes, we conclude that the offense comes within the ambit of a particularly serious crime.

We next consider the type of sentence imposed.  *See Matter of N-A-M-*, 24 I&N Dec. at 342.   The respondent's sentence of 3 to 5 years of imprisonment is significant, suggesting that the crime was particularly serious.   *See Matter of R-B-E-*, 29 I&N Dec. 499, 505 (BIA 2026) (concluding that a sentence to 4 years of probation plus restitution supported a finding that a crime was particularly serious).

Finally, we evaluate the "circumstances and underlying facts of the conviction."  *Matter of N-A-M-*, 24 I&N Dec. at 342.  Since the elements of the offense potentially bring it within the ambit of a particularly serious crime, "all reliable information may be considered in making [the] particularly serious crime determination, including the conviction records and sentencing information, as well as other information outside the confines of [the] record of conviction."  *Id.*; *see also Matter of E-A-S-O-*, 29 I&N Dec. at 425–26.  The record shows that the respondent was involved in a car accident on May 18, 2010, that caused serious injury to the other driver.  The respondent testified that she has no memory of the circumstances leading to her conviction, and she learned about it through police reports.  Police reports provide that a witness observed the respondent after the accident attempting to dispose of a suitcase that was in her vehicle.  Police later found the suitcase, which contained "a large amount of suspected compressed marijuana, wrapped in clear plastic wrap," measuring 13" x 22" x 10," which later tested positive as marijuana.  In concluding that the crime was not particularly serious, the Immigration Judge found that the respondent had no weight scales or large amounts of money in the suitcase, and the offense was nonviolent.  However, the record shows that the respondent was found in possession of a large quantity of illegal packaged drugs, she attempted to hide the drugs from law enforcement, and she received a significant sentence for violating title 35, section 780-113(a)(30) of the Pennsylvania Consolidated Statutes.  We therefore conclude, based on the facts and

---

[4]   *Matter of Y-L-, A-G-, & R-S-R-*, 23 I&N Dec. 270 (A.G. 2002), is thus inapplicable in this case.

circumstances underlying the respondent's conviction, that she has failed to establish that her offense is not particularly serious.[5]

For these reasons, we reverse the grant of asylum under section 208(b)(2)(A)(ii) of the INA, 8 U.S.C. § 1158(b)(2)(A)(ii).  We also conclude that the respondent is ineligible for withholding of removal pursuant to section 241(b)(3)(B)(ii) of the INA, 8 U.S.C. § 1231(b)(3)(B)(ii).[6]

The Immigration Judge found it unnecessary to determine the respondent's eligibility for CAT protection.  In our prior decision, we remanded the record to determine the respondent's eligibility for asylum and statutory withholding of removal without reaching the March 27, 2019, finding that the respondent failed to establish eligibility for deferral of removal under the CAT.  We therefore disagree with DHS' argument that the respondent's application for CAT protection is not properly before us pursuant to the law of the case doctrine.  *See Spann v. Nat'l Conf. of Bar Exam'rs*, 166 F.4th 1201, 1207 (10th Cir. 2026) (recognizing that the law of the case doctrine applies "once a court has ruled on an issue," in which case that decision continues to govern the same issues in later stages in the same case).

In opposing DHS' appeal, the respondent does not alternatively argue that a remand is necessary to further develop the record concerning her eligibility for CAT protection.  The respondent also does not allege error in the March 27, 2019, denial of her application for deferral of removal under the CAT.  We now review the March 27, 2019, denial of CAT protection,

---

[5]  While the respondent has been diagnosed with Adjustment Disorder, Personality Disorder Not Otherwise Specified Narcissistic and Paranoid Features, and Post Traumatic Stress Disorder, she does not claim that her mental health conditions played any role in the offense.  *See Matter of B-Z-R-*, 28 I&N Dec. 563, 567 (A.G. 2022) (overruling *Matter of G-G-S-*, 26 I&N Dec. 339 (BIA 2014), and holding that Immigration Judges may consider an alien's mental health in determining whether he or she, "having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States" (citation omitted)).

[6]  Because the particularly serious crime issue is dispositive, we need not reach the parties' arguments relevant to respondent's burden of proving eligibility for asylum and statutory withholding of removal on the merits.  *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."); *Matter of L-A-C-*, 26 I&N Dec. 516, 526 n.7 (BIA 2015) (declining to reach alternative issues on appeal regarding ineligibility for relief where an applicant is otherwise statutorily ineligible for such relief).

considering the arguments raised by the respondent in appealing from that decision.

To qualify for deferral of removal under the CAT, the respondent must show that she more likely than not will be tortured with the consent or acquiescence (including the concept of willful blindness) of a public official if removed to Jamaica. *See* 8 C.F.R. § 1208.17(a); *see also Garcia-Botello v. Bondi*, 168 F.4th 1245, 1257 (10th Cir. 2026). We review the Immigration Judge's factual findings regarding the type and likelihood of mistreatment that the respondent will experience for clear error and her legal determinations as to whether the mistreatment constitutes torture de novo. *See Matter of J-H-M-H-*, 29 I&N Dec. 278, 283 (BIA 2025) (citing *Matter of A-A-R-*, 29 I&N Dec. 38, 41 (BIA 2025), and *Matter of R-A-F-*, 27 I&N Dec. 778, 779 (A.G. 2020)).

Although the respondent was mistreated six times in Jamaica related to her sexual orientation, we affirm the Immigration Judge's determination that the harm did not constitute "torture" within the meaning of 8 C.F.R. § 1208.18(a) because it was inflicted by private citizens without the acquiescence of a public official. The Immigration Judge permissibly considered the lack of past torture in evaluating the likelihood of the respondent being tortured in the future. *See* 8 C.F.R. § 1208.16(c)(3)(i).

The record further supports the Immigration Judge's determination that the respondent was physically unharmed when she most recently lived in Jamaica for 6 to 7 months in 2016, during which time she moved several times. A report of the United Kingdom's Home Office also provides that "[w]here LGBT persons do encounter societal hostility they may be able to avoid this by moving elsewhere in Jamaica." Considering this, the Immigration Judge permissibly found that the respondent could avoid torture by relocating within Jamaica. *See* 8 C.F.R. § 1208.16(c)(3)(ii).

In addition, the Immigration Judge did not clearly err in evaluating background evidence in finding that the respondent is not more likely than not to be tortured upon removal. *See* 8 C.F.R. § 1208.16(c)(3)(iii)–(iv). The United States Department of State, Bureau of Democracy, Human Rights and Labor, 2017 Country Reports on Human Rights Practices for Jamaica supports the Immigration Judge's determination that the Jamaican Government has attempted to address human rights abuses by government authorities. Further, a Jamaican law prohibiting "acts of gross indecency" between person of the same sex was "enforced only in cases of sexual assault and child molestation and was not used to prosecute consensual same-sex sexual conduct between men." The United Kingdom's Home Office report

also supports the Immigration Judge's finding that "Jamaican law does not criminalize sexual orientation or changes to gender identity itself, nor does the government condone discrimination or violence against LGBT persons." Rather, the government has taken steps to address homophobic and transphobic violence and has made some progress. While the respondent argues for a particular construction of the evidence, the Immigration Judge did not clearly err in weighing it differently. *See Matter of D-R-*, 25 I&N Dec. 445, 454 (BIA 2011) (providing that Immigration Judges may make factual findings "based on reasonable inferences from direct and circumstantial evidence of the record as a whole"), *remanded on other grounds sub nom.*, *Radojkovic v. Holder*, 599 F. App'x 646 (9th Cir. 2015).

Finally, the record supports the Immigration Judge's finding that the respondent has never been detained by the authorities or directly harmed by police officers or other Jamaican government officials. The respondent also did not report any of the attacks she suffered to the police. The Immigration Judge permissibly evaluated these facts in finding that the respondent failed to show that a public official is more likely than not to acquiesce in her torture. *See* 8 C.F.R. § 1208.18(a)(7) ("Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity."); *Matter of S-V-*, 22 I&N Dec. 1306, 1313 (BIA 2000) (stating that "[s]pecific grounds must exist that indicate the individual would be personally at risk" of torture).

Overall, we affirm the Immigration Judge's finding that the respondent failed to show that she is more likely than not to be tortured by or with the acquiescence (including the concept of willful blindness) of a public official of the Jamaican government. *See* 8 C.F.R. §§ 1208.17(a) and 1208.18(a); *Garcia-Botello v. Bondi*, 168 F.4th at 1257; *Matter of S-V-*, 22 I&N Dec. at 1313.

**ORDER:** DHS' appeal is sustained, and the grant of asylum is vacated.

**FURTHER ORDER:** The respondent is found ineligible for asylum, withholding of removal, and deferral of removal under the CAT.

**FURTHER ORDER:** The respondent is ordered removed to Jamaica in accordance with the Immigration Judge's finding of removability.